LABOR RELATIONS COMMISSION *vs.* BOARD OF SELECTMEN OF DRACUT & another.

Middlesex. February 10, 1977. — March 14, 1978.

Present: HENNESSEY, C.J., KAPLAN, WILKINS, LIACOS, & ABRAMS, JJ.

*Municipal Corporations,* Police, Collective bargaining, Contracts, Town meetings, By-laws and ordinances. *Statute,* Revocation of acceptance. *Police. Labor. Contract,* Collective bargaining contract, With municipality.

Under the provisions of G. L. c. 213, § 1A, as appearing in St. 1962, c. 722, § 3, c. 214, § 2, as amended by St. 1954, c. 439, § 2, and c. 149, §§ 178G-178N, as amended through St. 1972, c. 713, § 4, the Superior Court had jurisdiction to entertain a petition by the Labor Relations Commission to enforce an order of the commission against a town and its board of selectmen. [623-625]

Elected successor public officials cannot be required to endorse publicly the terms of a collective bargaining agreement negotiated by their predecessors. [625-626]

Articles necessary to implement a collective bargaining agreement which had been considered and rejected at prior town meetings could be reconsidered and accepted at a subsequent town meeting. [627]

A town which voted at a town meeting to accept the provisions of G. L. c. 41, § 108L, was precluded thereafter from revoking its acceptance. [628]

Where a town had voted to appropriate funds necessary to meet certain cost items of a collective bargaining agreement with the town's police

officers, the rights of the officers to payment and other benefits guaranteed by the contract vested and the town was precluded thereafter from rescinding the appropriations. [628]

A town which had voted to amend an existing by-law in order to effectuate a provision in a collective bargaining agreement with the town's police officers was precluded from subsequently rescinding its vote where rights had vested under the earlier vote. [628-629]

A town's vote to amend an existing by-law at a special town meeting which had been ordered by a court as a result of the selectmen's failure to place certain articles in its warrant for the annual town meeting was not rendered invalid by another by-law provision that an existing by-law could be amended only at an annual town meeting. [629]

BILL IN EQUITY filed in the Superior Court on October 12, 1972.

An interlocutory decree was entered by *Ponte*, J., and the suit was reserved and reported to the Appeals Court by *Chmielinski*, J., on a statement of agreed facts. The Supreme Judicial Court, on its own initiative, ordered direct review.

*James Cooper* for Labor Relations Commission.

*Robert J. Canavan*, for International Brotherhood of Police Officers, intervener.

*Acheson H. Callaghan, Jr.*, for the Board of Selectmen of Dracut & another.

ABRAMS, J. This action involves a petition by the Labor Relations Commission (the commission) to enforce an order of the commission against the town of Dracut (the town) and its board of selectmen (the selectmen or the board). A judge of the Superior Court reserved and reported the case without decision, and the matter has been submitted to this court on a statement of agreed facts. See G. L. c. 231, § 111. We are asked to construe the provisions of G. L. c. 149, §§ 178G-178N, which relate to collective bargaining by municipal employees. Since the institution of these proceedings, G. L. c. 149, §§ 178G-178N, have been supplanted by a new, more comprehensive enactment. See G. L. c. 150E, inserted by St. 1973, c. 1078, § 2.

The pertinent facts are as follows: On December 28, 1971, the selectmen voted to recognize the International

Brotherhood of Police Officers (the union)[1] as the exclusive bargaining agent of the regular permanent police officers below the rank of chief in Dracut. Negotiations between the union and the selectmen ensued. By February 1, 1972, the parties had agreed to the terms of a draft collective bargaining agreement covering wages, hours, and conditions of employment. As each provision was agreed on, all parties, including the then three selectmen, Campbell, Gallagher, and Schiripo, initialed the draft agreement.

On February 8, 1972, at a regular meeting of the board, the contract was formally executed by the union's representative and by two of the three selectmen. The contract was to cover the period from January 1, 1972, to December 31, 1974. Selectmen Gallagher refused to sign the agreement, although he had earlier affixed his initials to the draft contract, ostensibly for the purpose of indicating his assent to its provisions. The final provision of the agreement bound the parties to "sponsor and support" the contract before the annual town meeting "as a fair and equitable contract, fairly reflecting the needs of both the Town and the employees of the Dracut Police Department."

On the same day, the selectmen signed the warrant for the annual town meeting. Implementation of several contractual provisions required action by the town at a town meeting. First, an amendment to an existing by-law was required to effectuate the transition from a five-day, forty-hour work week to a schedule of four days of work followed by two days off (the "four-two" provision). Second, appropriations were necessary to fund several of the increased financial benefits established under the contract. Finally, it was necessary for the town to accept the provisions of G. L. c. 41, § 108L, which involve incentive pay for police officers who seek further education, in order to implement one section of the contract. Although articles concerning these lat-

---

[1] On December 22, 1972, the union was allowed to intervene in the present action as a party in interest.

ter two matters were present on the warrant, the proposed by-law amendment was not.

Prior to the annual town meeting, the annual town election took place. The town had previously determined that the size of the board of selectmen would be increased from three to five members. Campbell, who had signed the agreement, and Gallagher remained on the newly formed board, and three new members were elected.

At the annual town meeting, which was held on March 11, 1972, the town's finance committee recommended an appropriation for the police department which would meet the 5.5% salary increase called for in the contract, but which would be insufficient to fund the other economic benefits contemplated by the collective bargaining agreement.[2] Gallagher supported the finance committee's recommendation, and no members of the board recommended passage of a larger appropriation. The town meeting voted to adopt the recommendation of the finance committee. No member of the board voiced support for the article concerning the town's acceptance of the provisions of G. L. c. 41, § 108L. This article was not approved by the town meeting.

On April 4, 1972, the union filed a complaint of prohibited practice with the commission. It alleged that the town had refused to bargain in good faith, see G. L. c. 149, § 178L, by failing to place on the town warrant those articles necessary for implementation of the collective bargaining contract. The commission, on June 7, 1972, issued its own complaint against the town of Dracut.

After a hearing held on June 28, 1972, a decision and order was issued on July 31, finding that the town had engaged in a prohibited practice (1) by failing to place articles on the town warrant necessary to implement the agreement and (2) by failing to support passage of the appropriations necessary to fund the collective bargaining

---

[2] The additional benefits included a clothing and equipment allowance, longevity increases, holiday pay, increased payments for court appearances, and the "four-two" work week.

contract. Accordingly, the commission ordered the town to "[t]ake any and all steps necessary to place articles in the Town Warrant necessary to implement the collective bargaining agreement . . . at the next special or regular town meeting." Thereafter the town took no action.

On October 12, 1972, the commission brought the present petition for enforcement in the Superior Court. After hearing, the Superior Court judge entered an interlocutory decree on October 19, 1972, ordering the defendants (1) to convene within thirty days a special town meeting and to place on the warrant articles necessary to implement the agreement and (2) to sponsor, support, and recommend favorable action on each article.

The town claimed an appeal from the interlocutory decree and sought to have the decree suspended by the Supreme Judicial Court. The single justice issued no order but advised the parties to seek modification of the decree from the judge who had issued it. When the Superior Court judge declined to modify his decree, the defendants returned to the single justice who refused to suspend operation of the decree. As stated, no decision on the merits of this petition has been issued by the Superior Court judge.[3]

1. *Jurisdiction of the Superior Court.* The defendants first challenge the Superior Court's interlocutory decree by contending that the Superior Court was without jurisdiction to entertain the petition for enforcement. We disagree.

General Laws c. 213, § 1A, as appearing in St. 1962, c. 722, § 3, provides in pertinent part that "[u]nless otherwise specifically provided, the superior court shall have original jurisdiction, concurrently with the supreme judicial court, of all proceedings, cases and matters of which the supreme judicial court has jurisdiction . . . ."[4] When the

---

[3] Since no action in conformance with the Superior Court judge's order had been taken, the commission, on January 5, 1973, instituted contempt proceedings against the defendants. That matter has not yet been resolved.

[4] General Laws c. 213, § 1A, provides in full: "Unless otherwise specifically provided, the superior court shall have original jurisdiction,

present petition was filed, G. L. c. 214, § 2, as amended by St. 1954, c. 439, § 2, provided in relevant part that "[t]he supreme judicial court shall have original and exclusive jurisdiction in equity of all cases and matters of equity cognizable under any statute . . . ."

General Laws c. 149, § 178L, as amended through St. 1972, c. 713, § 4, provided: "If, upon all the testimony, the commission determines that a prohibited practice has been committed, it shall state its findings of fact and shall issue and cause to be served on the party committing the prohibited practice an order requiring it . . . to cease and desist from such prohibited practice, and shall take such *further affirmative action* as will comply with the provisions of this section . . . ." (emphasis added). We think that the statutory phrase "further affirmative action" contemplates resort to the equitable powers of this court and of the Superior Court.

Moreover, "[a]ll the statutes must be construed, where capable, so as to constitute a harmonious whole consistent with the legislative purpose . . . . Such purpose is to be gleaned . . . from the supposed evil to be corrected, and from the objective sought to be attained." *Chief of Police of Dracut* v. *Dracut*, 357 Mass. 492, 499 (1970), quoting from *Mathewson* v. *Contributory Retirement Appeal Bd.*, 335 Mass. 610, 614-615 (1957). General Laws c. 149, §§ 178G-178N, granted employees of cities and towns the right to bargain collectively with their employers and created rules of conduct governing the relationship of employers and employees while they were engaged in the collective bargaining process. General Laws c. 149, § 178L, empowered the commission to determine the existence of prohibited practices and to take steps to assure the cessation of such

concurrently with the supreme judicial court, of all proceedings, cases and matters of which the supreme judicial court has jurisdiction, excepting those within the appellate jurisdiction of the full court, those provided for under section four of chapter two hundred and eleven, and those which cannot be transferred under section four A of said chapter." The exceptions in the statute are not relevant to the present case.

practices. Given the purpose of the statute, it is extremely doubtful that the Legislature intended the orders of the commission to be unenforceable.

Thus we conclude that the Superior Court did have jurisdiction over the present action.

2. *Validity of the decree.* The Superior Court judge in his interlocutory decree ordered the selectmen to place all necessary articles on the warrant for a special town meeting to be convened within thirty days of the decree and to support the passage of these articles at this meeting. We are asked to determine the validity of this decree. However, in the light of actions taken at subsequent town meetings, no purpose would be served by determining whether the decree should be enforced at this time.[5]

Before we consider those subsequent actions, we think it appropriate to express our views concerning whether successor public officials might be ordered to support publicly a collective bargaining agreement negotiated by their predecessors. This issue has been thoroughly briefed by the parties and is likely to recur in the future.[6] See *Boston Teachers Local 66* v. *School Comm. of Boston,* 370 Mass. 455, 468-469 (1976); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

The members of a board of selectmen are publicly elected officials, G. L. c. 41, § 1. Their constituents are entitled to the unfettered exercise of their judgment on matters of policy. A determination concerning whether to support

---

[5] Technically, the instant action only presents the issue whether the interloctory decree should be enforced. However, consideration of the subsequent actions taken by the town will provide a more complete resolution of the parties' dispute. These matters have been briefed and argued at some length. We are therefore inclined to express our views. See *Ciszewski* v. *Industrial Accident Bd.,* 367 Mass. 135, 141-142 (1975); *Wellesley College* v. *Attorney Gen.,* 313 Mass. 722, 731 (1943).

[6] We do not, however, decide whether public officials who contractually agree to support the terms of a collective bargaining agreement may be required to support the agreement. The issues relevant to this question were not explored in detail by the parties.

publicly a municipal collective bargaining contract constitutes such a policy decision. Cf. *Boston Teachers Local 66* v. *School Comm. of Boston, supra* at 473-475 (mayor may recommend disapproval of a budget request even though he is required to submit the request to the appropriate legislative body). Therefore, successor members of a board of selectmen should not be required to adopt a particular position which might not be in accord with their own judgment on a public issue.

Moreover, the discretionary, policy-making nature of a decision whether to indorse a collective bargaining agreement distinguishes this action from the type of actions which successors may be required to perform under *Mendes* v. *Taunton,* 366 Mass. 109 (1974). In *Mendes,* a mayor was required to submit an appropriation request necessary to fund a collective bargaining agreement executed by his predecessor. This action is a ministerial one which involves no exercise of a policy-making function. Thus *Mendes* does not provide authority for requiring successor public officials to perform discretionary, judgmental actions. Cf. *Duggan* v. *Taunton,* 360 Mass. 644 (1971).

A decision to support a collective bargaining agreement is a discretionary matter. The exercise of independent judgment concerning such matters serves an important public purpose. We conclude that elected successor public officials cannot be required to indorse publicly the terms of a collective bargaining agreement negotiated by their predecessors.[7]

3. *Subsequent developments.* The additional facts relevant to a consideration of the effect of subsequent actions taken in connection with the collective bargaining agree-

---

[7] We have based our conclusion concerning successor officials on public policy grounds. We need not and do not reach any First Amendment issues which might arise in connection with requiring elected officials to support a particular position. Moreover, we do not decide constitutional questions unless they are fully presented and require determination. See *School Comm. of Springfield* v. *Board of Educ.,* 362 Mass. 417, 445 (1972).

ment are as follows. At a special town meeting held on July 22, 1972, the town approved an appropriation which would fund the contractual provision relating to increased holiday pay. Other cost items of the contract, although considered at this special meeting, were not approved. Another special town meeting took place on October 14, 1972; funding for increased longevity increments was considered and rejected. A third special meeting was convened on January 27, 1973. At this meeting every remaining article necessary to implement the collective bargaining agreement was passed. However, at the next annual town meeting, held on March 10, 1973, a majority of the participants voted to rescind those actions taken at the January 27 meeting.

The fact that many of the articles necessary to implement the collective bargaining agreement had earlier been considered and rejected at town meetings did not prevent the town from approving them at the January 27, 1973, meeting. When rights have not become vested under the vote of a town meeting, the inhabitants of a town may reconsider their former vote at a subsequent meeting. *Ogden* v. *Selectmen of Freetown,* 258 Mass. 139, 142 (1927). *Adams* v. *Townsend Schoolhouse Bldg. Comm.,* 245 Mass. 543, 546-547 (1923). *Revere Water Co.* v. *Winthrop,* 192 Mass. 455, 466 (1906), appeal dismissed, 207 U.S. 604 (1907). The intervention of a right of some third party, however, forecloses rescission of the earlier action. *Mansfield* v. *O'Brien,* 271 Mass. 515, 518-519 (1930). *Hunneman* v. *Grafton,* 10 Met. 454, 456-457 (1845). In the present case, since the earlier rejection of the articles necessary to implement the collective bargaining agreement had created no obligations, no rights had vested and no rights of third parties had intervened at the time of the January 27 meeting. See *Ogden* v. *Selectmen of Freetown, supra; Revere Water Co.* v. *Winthrop, supra.* Thus the articles necessary to implement the collective bargaining agreement could be reconsidered at the January 27 meeting.

We turn now to an examination of the various types of articles approved at the January 27, 1973, meeting and the ef-

fect on them of the attempted rescissions undertaken at the March 10, 1973, meeting.

Under the collective bargaining agreement, the town was to provide educational incentive salary increases. The program which makes available such payments was established by the Legislature and was made subject to acceptance by the respective cities and towns of the Commonwealth. See G. L. c. 41, § 108L. At the January 27 meeting, the town voted to accept G. L. c. 41, § 108L; however, at the March 10 meeting the town attempted to revoke this acceptance. It is well established that when a locality exercises its option to accept the provisions of general legislation, absent a provision in the statute permitting revocation of such acceptance, the statute is operative in the community until it is repealed or amended by the Legislature. *Chief of Police of Dracut* v. *Dracut,* 357 Mass. 492, 496-498 (1970). *Brucato* v. *Lawrence,* 338 Mass. 612, 615-616 (1959). The subsequent vote of the town, which attempted to revoke its earlier acceptance of c. 41, § 108L, therefore had no effect.

At the January 27 town meeting, the town voted to appropriate the funds necessary to meet the remaining cost items of the collective bargaining agreement; again the town attempted to rescind this action at the March 10 meeting. As noted above, if rights have vested under a vote at a town meeting or if the rights of third parties have intervened, the vote cannot be rescinded at a later meeting. When the townspeople made the appropriations necessary to implement the terms of the collective bargaining agreement and thereafter the police officers of Dracut rendered substantial services to the town, the rights of these officers to payment and other benefits guaranteed by the terms of the contract vested. See *Hunneman* v. *Grafton, supra*; *Allen* v. *Taunton,* 19 Pick. 485 (1837). Since rights thus vested under the town's vote on January 27, the town could not rescind the earlier appropriations.

The "four-two" work week clause of the contract was in direct conflict with an existing by-law. At the January 27 meeting, the town amended its by-laws by repealing the ex-

isting by-law and replacing it with the "four-two" work week provision. Again, since rights vested under this vote, for the reasons stated above, the town's action was unaffected by the attempted rescission on March 10.

The town argues that the action taken at the special town meeting on January 27 was invalid since a town by-law provides that an existing by-law may be amended only at an *annual* town meeting. However, the town cannot through the application of this by-law frustrate remedial action which has been ordered by a court.[8] It was therefore permissible for the town to amend its by-laws at the special town meeting. See *Ellis* v. *Selectmen of Barnstable,* 361 Mass. 794, 801-802 (1972).

We conclude that the terms of the contract were in full force as of January 27, 1973, and continued in force notwithstanding the subsequent actions taken at the meeting of March 10. One issue remains unresolved: whether the contract was implemented from January 27, 1973, forward or whether it was effective retroactively to sometime in 1972. This issue, however, is inextricably intertwined with the question whether the defendants violated the Superior Court's interlocutory decree. See *Ellis* v. *Selectmen of Barnstable, supra.* Since contempt proceedings are still pending against the defendants, we do not decide whether the contract should be found to be in effect retroactively.

The case is remanded to the Superior Court, where the interlocutory decree is to be vacated and a judgment is to be entered dismissing the petition for enforcement.

*So ordered.*

---

[8] The fact that articles necessary to implement the "four-two" work week provision should have been placed on the warrant for the annual meeting is not disputed. If the court had jurisdiction, it was therefore proper to order the officials to perform the ministerial act of placing the article on the warrant. See *Mendes* v. *Taunton,* 366 Mass. 109, 118-119 (1974).