SCHOOL COMMITTEE OF BROCKTON vs. MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION & another.[1]

Plymouth. May 9, 1996. - June 19, 1996.

Present: LIACOS, C.J., WILKINS, ABRAMS, GREANEY, & FRIED, JJ.

*Anti-Discrimination Law,* Sex, Maternity leave, Attorney's fees. *Mas-
sachusetts Commission Against Discrimination. Limitations, Statute of.
Laches. Administrative Law,* Substantial evidence, Findings, Evidence,
Class action. *Contribution.*

Substantial evidence supported the conclusion of the Massachusetts Com-
mission Against Discrimination, accepting the decision of a hearing
commissioner, that a teachers' union's complaint was timely filed within
six months of a school committee's communication in April, 1979, of its
final, unconditional decision to deny sick leave benefits for teachers'
pregnancy-related disabilities, requested from 1973 through 1978. [10-11]
Where there was no basis for assigning responsibility to the complainants
for delay in the pendency of a proceeding before the Massachusetts
Commission Against Discrimination, there was no basis for the party
complained against to request dismissal of the complaint for laches.
[11-13]
Where, in a proceeding before the Massachusetts Commission Against
Discrimination brought by teachers and their union against a school
committee, the committee had no right to seek contribution from the
union where there was no showing that the union participated in the al-
leged discriminatory acts. [13-14]
Substantial evidence supported the conclusion of the Massachusetts Com-
mission Against Discrimination, accepting the decision of a hearing
commissioner, that a teachers' union was the appropriate class represen-
tative of the teachers for any prospective relief against the school com-
mittee. [14-15]
In a proceeding before the Massachusetts Commission Against Discrimina-
tion, substantial evidence in the form of uncontradicted letters of attend-
ing physicians supported the assessment of damages against a school
committee for its discriminatory acts from 1973 through 1978 denying
pregnant teachers sick leave benefits during the teachers' pregnancy-
induced periods of disability. [15-16]
The Massachusetts Commission Against Discrimination correctly gave ret-
roactive effect to the amendment to G. L. c. 151B, § 5, set forth in St.
1989, c. 722, § 27, to award attorney's fees to complainants whose case
was pending at the time the amendment was enacted. [16]

[1]Brockton Education Association.

CIVIL ACTION commenced in the Superior Court Department on January 8, 1991.

The case was reported to the Appeals Court by *Cortland A. Mathers*, J., on a statement of agreed facts. The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Regina Williams Tate* for School Committee of Brockton.

*Mark G. Kaplan (Sheilah F. McCarthy* with him) for Brockton Education Association.

*Jerrold S. Levinsky* for Massachusetts Commission Against Discrimination.

GREANEY, J. We transferred this case to this court on our own motion to consider arguments made by the school committee of Brockton (school committee) alleging error in a decision of the Massachusetts Commission Against Discrimination (commission). The commission accepted the decision of a hearing commissioner,[2] which found that the school committee had engaged in unlawful sex discrimination in violation of G. L. c. 151B, § 4 (1) (1994 ed.), by denying accrued sick leave benefits to teachers disabled by pregnancy, and awarded damages and interest to the harmed teachers. The commission itself awarded attorney's fees to the teachers. We affirm the commission's decision.

The background of the case is as follows. On August 17, 1979, the Brockton Education Association (union)[3] filed a class action complaint with the commission against the school committee. The complaint was filed on behalf of teachers in the Brockton public schools who, from January, 1973, to December, 1978, had requested and been denied the use of accrued sick leave for pregnancy-related disabilities.[4] The complaint stemmed from this court's decision on February 28, 1979, in *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 377 Mass. 392 (1979) (*Brockton* decision), which upheld a commission decision that

---

[2]The complaint at issue first had been presented to an investigating commissioner.

[3]At all relevant times, the union was the exclusive collective bargaining representative for all teachers and other nonexempt professional employees in the Brockton public schools.

[4]The class did not include four teachers who had filed individual complaints of discrimination, or grievances, concerning the disposition of their requests.

the school committee had violated G. L. c. 151B, § 4, by discriminating on the basis of sex against Cynthia Zettlemoyer, a Brockton public school teacher, when it denied her January, 1973, request to use her accrued sick leave during her pregnancy-related disability.

On 114 occasions while the Zettlemoyer complaint was pending, public school teachers in Brockton requested to apply their accrued sick leave to the period of their pregnancy-related disabilities. The requests were denied.[5] Each teacher's request was presented to the school committee by the Brockton school superintendent, along with the superintendent's recommendation for handling the request. During 1973, 1974, and the first five months of 1975, the superintendent's recommendations to the school committee were phrased in different ways, but some referred to a test case on the issue of allowing sick leave for maternity-related disabilities, and indicated that the teachers' ultimate eligibility for sick leave benefits would depend on the outcome of the test case.[6] In some cases which arose as early as February 16, 1975, and in all cases which arose on and after May 20, 1975, the superintendent's recommendation to the school committee was to grant any application for maternity leave "without pay and without sick leave pending a court decision."

During 1973, 1974, and the first ten and one-half months of 1975, the school committee responded to pregnant teachers' requests for sick leave benefits with letters which were worded in different ways, some of which stated that the teacher's ultimate eligibility for the requested benefits would depend on the outcome of a court case on the issue. In some cases which arose as early as January 22, 1975, and in all cases which arose after October 15, 1975, the school committee responded to the teachers' requests with a form letter stating that "[s]ince the question of sick leave for maternity has yet to be resolved in a test case, it is not possible to grant your request for this." It is undisputed that the test case

[5]Some teachers made the request for two separate pregnancies.

[6]For example, minutes from the school committee meeting held in September, 1974, stated that the superintendent recommended that "no award for sick leave payments should be made in view of the fact that there are test cases before the courts, but [a teacher requesting leave] would not be prohibited from seeking it should there be a clarification of maternity sick leave benefits by the courts in the future. . . . [A teacher's request for sick leave benefits should] be denied without prejudice."

referred to in all of these statements and letters was the *Brockton* decision.[7]

Shortly after our decision in the *Brockton* decision, the union requested payment from the school committee of accrued sick leave benefits for the pregnant teachers who had requested, but been denied, benefits during the pendency of the Zettlemoyer complaint. In a letter sent on April 25, 1979, the school committee denied the union's request, stating that it would not grant retroactive benefits under the *Brockton* decision, unless the teacher claiming benefits had filed a complaint with the commission on the denial of her request. The union proceeded to file the present class action complaint.

The school committee recognizes that teachers in the same position as Zettlemoyer have suffered discrimination, a conclusion established by the *Brockton* decision. The school committee, however, makes a variety of arguments, which we next discuss, on why the commission's decision nevertheless should be set aside.

1. *Statute of limitations.* General Laws c. 151B, § 5 (1994 ed.), requires that a charge of discrimination be filed with the commission within six months of the occurrence of the discriminatory act. The school committee asserts that the discriminatory acts against the class members occurred between 1973 and 1978, when the teachers initially were denied accrued sick leave for pregnancy-related disabilities. The school committee concludes that, since the complaint was not filed within six months of these initial denials, it is barred by § 5.

The commission upheld the hearing commissioner's findings that the denial notifications received by the teachers between 1973 and 1978 were conditional denials, with the final decision on benefits reserved until after the conclusion of the *Brockton* decision; that the school committee did not make a final, unconditional decision to deny benefits until it sent its

---

[7]During the pendency of the Zettlemoyer complaint, the union and the school committee negotiated collective bargaining agreements. The collective bargaining agreement in effect during this period stated: "[M]aternity leave of up to three (3) years will be granted without pay or increment." The union did not propose changing this provision to allow teachers to use their sick leave benefits for pregnancy-related disability until 1979, even though the Massachusetts Teachers Association had advised its local affiliates to do so as early as 1975.

April 25, 1979, letter to the union; and, accordingly, that the statute of limitations began to run on April 25, 1979, less than six months before the union filed its complaint.

The commission accepts facts found by the hearing commissioner if they are supported by substantial evidence, 804 Code Mass. Regs. § 1.16(8) (1986), and a reviewing court gives similar acceptance to the commission's determinations. *Lynn Teachers Union, Local 1037* v. *Massachusetts Comm'n Against Discrimination*, 406 Mass. 515, 517 n.1 (1990). "Substantial evidence" is defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1 (6) (1994 ed.).

There was substantial evidence before the hearing commissioner that the school committee's initial letters denying the teachers' requests to use accrued sick leave were tentative and conditional in nature and, reasonably interpreted, that the letters expressed an intent not to make a final determination on benefits until the *Brockton* decision had been decided. For example, many of the letters sent by the school committee to teachers before October, 1975, and all the letters sent afterwards, expressly made reference to a test case on using accrued sick leave for pregnancy-related disability, and suggested that a final decision as to eligibility for benefits would rest on the outcome of that case. The recommendations of the superintendent to the school committee followed a similar line.

Based on this and other evidence, the commission properly accepted the hearing commissioner's findings that the statute of limitations began to run on April 25, 1979, when the school committee communicated its final, unconditional decision to deny the requested benefits. See *Wheatley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 398 (1994) ("The statutory period for complaining of a discriminatory termination does not begin to run until the employee has sufficient notice of that specific act" [citation omitted]). The union's complaint, therefore, was seasonably filed.[8]

2. *Laches.* The school committee argues that delay in the

[8]The principle expressed in Federal case law that "[t]he proper focus [for determining when a statute of limitations period commences] is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful," *Delaware State College* v. *Ricks*, 449 U.S. 250, 258 (1980), does not conflict with this conclusion. See *Wheat-*

resolution of the complaint, occasioned by the union's and the teachers' delay in filing the charge, and the commission's delay in processing the charge, requires dismissal of the complaint on the basis of the doctrine of laches. We reject this argument.

This case was pending before the commission for over eleven years before a final decision was reached. The delay is regrettable, but we see no basis for assigning any blame for the delay to the union or the teachers seeking benefits. Rather, the delay appears to be attributable, in part, to the school committee's choosing to litigate every important facet of the case. The school committee, of course, had a right to do so, but delay caused by the school committee's intense litigation tactics should not be held against the union and the teachers. The backlog of cases pending at the commission, and the commission's lack of resources, also appear to have contributed to the delay. That situation, while unfortunate, also cannot bar the union's and the teachers' claims.[9] Delay which is

*ley* v. *American Tel. & Tel. Co.*, 418 Mass. 394, 397 (1994) ("It is our practice to apply Federal case law construing the Federal antidiscrimination statutes in interpreting G. L. c. 151B"). The commission upheld the commissioner's finding that the statute of limitations began to run on April 25, 1979, because substantial evidence indicated that the teachers did not receive final notice of the school committee's decision to deny sick leave benefits until that date, see *Chardon* v. *Fernandez*, 454 U.S. 6, 8 (1981) (statute of limitations began to run when plaintiffs were notified by letter that a final decision had been made to terminate their appointments), not because it found the effects of being denied benefits were felt on that date.

Our conclusion that the hearing commissioner properly decided that the statute of limitations did not begin to run until April 25, 1979, renders it unnecessary to consider the hearing commissioner's other ground for concluding that the complaint had been filed in a timely manner, namely, that the school committee's conduct served to toll the running of the statute of limitations until April 25, 1979.

[9]The Federal case law cited by the school committee does not support its argument that we should apply the doctrine of laches based on delay caused by the commission. The cases the school committee refers to concern the Equal Employment Opportunity Commission (EEOC), which is empowered to commence its own actions against employers in Federal court. While Federal courts have applied the doctrine of laches to the EEOC where the EEOC delayed inordinately in filing an action against an employer, see, e.g., *EEOC* v. *Dresser Indus., Inc.*, 668 F. 2d 1199 (11th Cir. 1982) (five-year delay by EEOC in filing suit); *EEOC* v. *Alioto Fish Co.*, 623 F.2d 86 (9th Cir. 1980) (sixty-two month delay by EEOC in filing suit), the Federal

not caused by the party bringing an action before the commission cannot furnish a basis for the application of laches.

3. *Remaining issues.* (a) The investigating commissioner denied the school committee's motion to join the union as a party-respondent because the commission has no rule allowing for third-party practice. The school committee argues that the commission's lack of a formal third-party practice rule deprived it of due process by preventing it from bringing a claim for contribution against the union.[10] Under G. L. c. 231B, §§ 1 and 2 (1994 ed.), the commission has recognized a right of contribution against a union which is found to be jointly liable, along with an employer, for discrimination.

Without expressly addressing the issue of a third-party practice rule, the hearing commissioner concluded that the school committee had no right to seek contribution from the union because there was "no showing that the union participated in the discriminatory acts." The hearing commissioner's findings of fact on which this conclusion is based are supported by substantial evidence which demonstrates that the union had consistently acted on behalf of, and in favor of, the teachers.[11] Accordingly, the school committee's motion

courts have not applied the doctrine to bar claims brought by private individuals, in cases where the EEOC's processing of the claim, rather than the private individual's own actions, is responsible for the delay. See, e.g., *Brown* v. *Continental Can Co.*, 765 F.2d 810 (9th Cir. 1985); *Rozen* v. *District of Columbia*, 702 F.2d 1202 (D.C. Cir. 1983); *Gifford* v. *Atchison, Topeka & Santa Fe Ry.*, 685 F.2d 1149 (9th Cir. 1982).

[10]The school committee also asserts that the commission's lack of a formal third-party practice rule encourages collusive suits between a union and aggrieved members to hold an employer totally liable for discrimination, without consideration of union culpability.

[11]There was evidence that the union consistently lobbied the school committee to permit the use of sick time during maternity leaves, counselled its membership on how to assert and protect their rights with respect to the use of sick time, and interceded with the school committee on behalf of the teachers seeking benefits. Even though the union did not enter into collective bargaining to end the discriminatory practice at issue until 1979, this does not mean it participated in the discrimination. While the collective bargaining agreement allowed the school committee to deny the use of sick days during maternity leave, no provision of the agreement actually compelled denial. No class member has alleged that the union participated with the school committee in its discriminatory acts. Furthermore, procedural mechanisms exist which protect against collusion. The commission may amend a complaint, sua sponte, to add a union as a party-respondent where

was correctly denied without regard to the commission's lack of a formal third-party practice rule.

(b) The school committee argues that the union was not a proper class representative of the teachers, that class certification therefore should have been withdrawn, and, once withdrawn, that the school committee's motion to dismiss the complaint should have been allowed.[12]

There is substantial evidence to support the hearing commissioner's findings (which led her to confirm the union as a class representative for any prospective relief) that (1) there was no conflict in the union representing the class vis-à-vis the rest of its membership; (2) the union can, and has, satisfactorily represented the interests of the class; and (3) the union is an ideal representative of the class for any award of prospective relief.

There is no indication (beyond the school committee's speculation) that a conflict existed between the affected teachers and the union membership at large. See *Social Servs. Union, Local 535* v. *County of Santa Clara*, 609 F.2d 944, 948 (9th Cir. 1979) (finding assumption that male union members would suffer pecuniary injury if the pay of female employees was raised to be purely speculative).

The hearing commissioner appropriately found that the same findings of fact which supported her affirmation of the dismissal of the motion to join the union as a party-respondent, supported a finding that the union was a proper

such action is deemed appropriate. *Gaspar* v. *Somerset School Comm.*, 9 Massachusetts Discrimination L. Rep. 113, 115 (1987).

[12]The commission accepted the hearing commissioner's finding that the union was a proper class representative for any prospective relief. It also accepted the hearing commissioner's finding that the union lacked standing to seek lost wages on behalf of the class, and her order, therefore, that the class appoint one or more new class representatives with standing to assert the claim for lost wages, as well as for prospective relief. As to the latter issue, the school committee, without citing any authority, argues the commissioner was not empowered to have the class select new class representatives to seek damages, since the class already had been certified, and instead should have dismissed the class action. This is not correct. Cf. *Social Servs. Union, Local 535* v. *County of Santa Clara*, 609 F.2d 944, 948-949 (9th Cir. 1979) (a decision as to class certification is not immutable and if at any time it appears that for any reason a union no longer fairly and adequately protects the interests of the class, class status may be withdrawn or appropriately modified).

class representative. See note 11, *supra.*[13] Accordingly, the school committee's motion to dismiss was properly denied.

(c) The hearing commissioner assessed damages for a majority of the individual teachers predominantly by relying on letters from the physicians who cared for the women during their pregnancies, which indicated the period of disability attributable to each pregnancy. The letters were hearsay which the school committee maintained should not have been admitted or given probative weight by the hearing commissioner. The argument lacks merit: The letters provided substantial evidence upon which the hearing commissioner could determine length of disability to be used for assessing and awarding damages.

In administrative proceedings, hearsay evidence can be received and may constitute substantial evidence if it contains sufficient indicia of reliability and probative value. *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 530 (1988). The commission, and not the court, is the sole judge of the credibility and weight of the evidence before it. *Id.* at 529. A court will overturn the commission's findings only if the court concludes, as matter of law, that the commission's reliance on evidence was unreasonable.

The physicians' letters contained sufficient indicia of reliability and probative value to constitute substantial evidence. The hearing commissioner reasonably could have found that the letters were reliable and probative because: (1) each was prepared by a physician who had treated the teacher in question personally, see *Richardson* v. *Perales*, 402 U.S. 389, 403 (1971); (2) there was an unquestionably high degree of consistency among the different physicians' letters in assessing the length of disability suffered by teachers with the same disability, cf. *id.* at 404; (3) the school committee did not take advantage of its right to subpoena and cross-examine any of

---

[13]Moreover, the hearing commissioner properly found that the union's involvement in the negotiation of the provision in the collective bargaining agreement which called for unpaid maternity leave did not create a conflict of interest. See, e.g., *Social Servs. Union, Local 535* v. *County of Santa Clara, supra* at 947-948 (evidence showing union consistently acted in the best interests of its members precluded any inference that allegedly discriminatory terms of employment in a collective bargaining agreement demonstrated union could not fairly and adequately protect the interests of the class). As discussed above, there is substantial evidence that the union consistently acted in the best interests of its members.

the physicians, see *id.* at 404-405; (4) the question of how long any teacher was disabled as a result of pregnancy does not require a great deal of substantiating detail; and (5) the school committee did not present any evidence to contradict the periods of disability stated in the letters. See *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction*, 396 Mass. 830, 834 (1986).

Finally, it is not a problem that the letters were written in contemplation of litigation. The hearing commissioner did not find any basis to believe the physicians would lie in the letters and, as has been stated, the school committee had the opportunity to examine the physicians and test their credibility.[14]

(d) While the case was pending before the full commission, G. L. c. 151B, § 5, was amended by St. 1989, c. 722, § 27, to allow a complainant who prevails before the commission to be awarded attorney's fees. Contrary to the school committee's argument, the commission correctly gave retroactive effect to the attorney's fees amendment. In *Fontaine* v. *Ebtec Corp.*, 415 Mass. 309, 320 (1993), we noted that St. 1989, c. 722, § 27, simply entitled complainants who pursued their cases before the commission to a remedy commensurate with the remedy to which they would have been entitled if they had filed suit and prevailed in a State or Federal court. Because the amendment merely was providing complainants with an adequate alternative forum for remedying discrimination, we stated it was appropriate for the commission to give it retrospective application. *Id.* Based on *Fontaine*, the commission's decision to grant attorney's fees in this case was correct.

The decision of the commission is affirmed.

*So ordered.*

---

[14]In its brief, the school committee does not appear to contest the hearing commissioner's award of two weeks of disability pay to the teachers without physicians' letters, based on the hearing commissioner taking administrative notice of the fact that women are disabled invariably for some period of time after giving birth.