Chief Justice for Admin. & Mgt. *v.* Massachusetts Comm'n Against Discrimination.

# Chief Justice for Administration and Management of the Trial Court & another[1] *vs.* Massachusetts Commission Against Discrimination & others.[2]

Suffolk. May 5, 2003. - July 11, 2003.

Present: Marshall, C.J., Greaney, Ireland, Cowin, Sosman, & Cordy, JJ.

*Administrative Law,* Judicial review, Orders. *Chief Justice for Administration and Management. Massachusetts Commission Against Discrimination. Anti-Discrimination Law,* Sex, Employment. *Employment,* Discrimination. *Clerk of Court. Trial Court.*

Discussion of the legal framework applicable to discrimination cases based on indirect or circumstantial evidence. [732-733]

In a civil action appealing a decision of the Massachusetts Commission Against Discrimination (commission) that affirmed a hearing commissioner's conclusion that two female Trial Court employees had sufficiently proved that the clerk of the Hampden County Superior Court denied them a promotion on the basis of sex, the judge incorrectly vacated the commissioner's decision and remanded the case to the commission to make findings regarding each of the nondiscriminatory reasons for the challenged hiring decisions, where the commissioner considered evidence that supported such nondiscriminatory motives, and where the commissioner's findings that the employees had presented sufficient evidence to establish the elements of a prima facie sex discrimination case and that the clerk's proffered explanation for failing to promote the employees was a pretext were adequate. [733-736]

In an action for sex discrimination before a hearing commissioner of the Massachusetts Commission Against Discrimination, an order awarding injunctive relief, front pay, and emotional damages to female employees who were not promoted because of sex discrimination was within the commissioner's authority and supported by substantial evidence, and was therefore appropriate. [736-737]

Civil action commenced in the Superior Court Department on June 30, 1999.

The case was heard by *Stephen E. Neel,* J., on motions for judgment on the pleadings.

---

[1]The clerk of the Hampden County Superior Court.

[2]Cheryl A. Cossaboom and Mary C. O'Brien, administratrix of the estate of Theresa O'Brien.

730                             439 Mass. 729 (2003)

Chief Justice for Admin. & Mgt. *v.* Massachusetts Comm'n Against Discrimination.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mary J. Kennedy* for Cheryl A. Cossaboom.

*William C. Flanagan* for Mary C. O'Brien.

*Jerrold S. Levinsky* for Massachusetts Commission Against Discrimination.

*Jean Strauten Driscoll* for the plaintiffs.

COWIN, J. This case arises from a hearing commissioner's decision, subsequently affirmed by the full Massachusetts Commission Against Discrimination (commission), holding the clerk of the Hampden County Superior Court (clerk) and the Trial Court liable for sex-based hiring discrimination that the clerk committed. The Trial Court, in conjunction with the clerk,[3] appealed from the commission's affirmance to the Superior Court pursuant to G. L. c. 30A, § 14.[4] A Superior Court judge vacated the decision of the commission and remanded the case for rehearing. The commission and the complaining parties appealed from that ruling[5] and we transferred the case from the Appeals Court on our own motion. We reverse.

I. *Facts.*

The hearing on this matter took place in November and December, 1995, and the hearing commissioner issued his opinion in March, 1996. We recount the significant factual findings contained in that opinion, which we find to be supported by substantial evidence.[6] See *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7,

---

[3]O'Brien argues that the clerk has no standing in this appeal. Given our decision, there is no need to address this point.

[4]We refer to this matter as the Trial Court's appeal because it was briefed and argued by the Administrative Office of the Trial Court.

[5]Although an order of remand to an administrative agency is interlocutory and may not be appealed from by the parties to the underlying action, a judge's decision to remand a final agency ruling may be appealed by the agency itself, as it was in this case. See *Kelly* v. *Civil Serv. Comm'n*, 427 Mass. 75, 76 n.2 (1998); *Cliff House Nursing Home, Inc.* v. *Rate Setting Comm'n*, 378 Mass. 189, 191 (1979).

[6]The Trial Court argues that we should reject the commissioner's factual findings because he improperly considered a report documenting gender bias within the Trial Court and because he ignored other evidence favorable to the Trial Court. The admission of the report was proper, see *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7, 15

11 (1996). In 1993, the complainants, Cheryl A. Cossaboom and Theresa O'Brien,[7] were employed by the Hampden County Superior Court clerk's office (clerk's office). Each had been employed by that office for approximately twenty years, and by 1993, each had attained the position of head administrative assistant, the highest clerical position within the office. Due to staffing shortages in the clerk's office caused by a Trial Court "hiring freeze," both complainants had also been sworn in as deputy assistant clerks. As such, in addition to their normal responsibilities, they performed the court room duties of an assistant clerk.

The hiring freeze was lifted in the fall of 1992, and William J. Martin, Jr., then the elected clerk,[8] posted two assistant clerk positions. The complainants applied for these positions, but, despite a Trial Court recommendation that clerks hire from within their own organizations, Martin chose to hire John Fitzgerald and Terrence Ginley, both males, from outside the office. In written hiring documents, Martin (who did not testify at the hearing) listed "[j]ob knowledge insufficient for the position" as his reason for declining to hire the complainants. Neither Fitzgerald, a former probation officer, nor Ginley, a former tax collector, had ever worked in a clerk's office, although both had participated in Martin's 1982 political campaign. During Martin's tenure as clerk, he hired five assistant clerks and four head administrative assistants. All were male. In addition, male office personnel received preferential consideration for office space and less strenuous session assignments.

After finding for the complainants, the commissioner awarded back pay, front pay, and damages for emotional distress. In ad-

---

(1996) (hearsay evidence may be considered in administrative proceedings), and the evidence referred to by the Trial Court was discredited, not ignored. We will not second guess the commissioner's credibility determinations. See *id.* ("The commission, and not the court, is the sole judge of the credibility and weight of the evidence before it").

[7]Theresa O'Brien is now deceased and is represented by the administratrix of her estate.

[8]In 1995, Martin was succeeded in office by another elected clerk.

dition, he ordered the Trial Court and clerk's office[9] to cease engaging in discriminatory hiring practices, to appoint the complainants to the next available assistant clerk positions in the clerk's office,[10] and to distribute a copy of the commissioner's decision and a blank employment discrimination complaint form to the entire clerical staff of the Trial Court.

II. *Discussion.*

1. *Discrimination.*

Because the complainants did not provide any direct evidence of discrimination,[11] the commissioner applied the legal framework applicable to discrimination cases based on indirect or circumstantial evidence. This framework, first articulated by the Supreme Court of the United States in *McDonnell Douglas Corp.* v. *Green,* 411 U.S. 792 (1973), and adopted by this court in *Wheelock College* v. *Massachusetts Comm'n Against Discrimination,* 371 Mass. 130 (1976), involves a three-stage order of proof. In stage one, a plaintiff must establish a prima facie case of discrimination. In a hiring discrimination case, this requires four showings: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff applied for an open position; (3) that the plaintiff was not selected; and (4) that the employer filled or sought to fill the position with a similarly qualified individual. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination,* 431 Mass. 655, 665-666 n.22 (2000). A prima facie case, once established, "creates a presumption of discrimination." *Abramian* v. *President & Fel-*

---

[9]In the remedy section of the decision, the commissioner ordered the "Respondent" to take various remedial steps. Because there were several respondents in this action, the use of the singular term has been a source of some confusion. It is sufficiently clear from the totality of the decision, however, that the commissioner intended the term "Respondent" to encompass both the Trial Court and the clerk's office. There is no real dispute concerning which remedies apply to which party.

[10]This portion of the order is obviously now moot as to O'Brien.

[11]Direct evidence is evidence that, "if believed, results in an inescapable, or at least highly probable, inference that a forbidden bias was present in the workplace." *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination,* 431 Mass. 655, 667 (2000), quoting *Johansen* v. *NCR Comten, Inc.,* 30 Mass. App. Ct. 294, 300 (1991). Typically, direct evidence consists of statements of discriminatory intent attributable to an employer, see *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination, supra* at 667-668. Not surprisingly, such evidence is rarely presented.

*lows of Harvard College*, 432 Mass. 107, 116 (2000). This presumption may be rebutted in the second stage of the analysis if the employer can articulate "a legitimate, nondiscriminatory reason for its hiring decision" backed by "credible evidence [showing] that the reason or reasons advanced were the real reasons." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 441-442 (1995), quoting *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra* at 138. If an employer can produce a nondiscriminatory reason for its decision with an adequate evidentiary backing, then, to prevail in the third stage of the analysis, the plaintiff must persuade the trier of fact by a preponderance of the evidence that discriminatory animus was the "determinative cause" for the employer's decision. *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 504 (2001). A fact finder's decision in the third stage may be based, either in whole or in part, on a determination that a legitimate reason for the employer's decision advanced in stage two was actually a pretext. See *id.* at 501; *Abramian* v. *President & Fellows of Harvard College, supra* at 117-118.

Applying the three-stage analysis to the facts of this case, the commissioner first ruled that the complainants had presented sufficient evidence to establish a prima facie case of sex discrimination.[12] The commissioner next addressed Martin's statement that the complainants were passed over for promotion because they did not have the requisite job knowledge to fill the position of assistant clerk. He treated this statement as a stage two nondiscriminatory justification for Martin's hiring decision.[13] When he evaluated that justification in stage three, however, the commissioner found that, in view of the complain-

---

[12]The Trial Court has not challenged this initial determination on appeal.

[13]It makes no difference that, in its argument to the commissioner, the Trial Court disavowed Martin's stated reason for rejecting the complainants' applications. An employer's possible nondiscriminatory motives (pretext or not) are defined by the evidentiary record, not the arguments of counsel. See *Texas Dep't of Community Affairs* v. *Burdine*, 450 U.S. 248, 255 & n.9 (1981). If, at the time of the hiring, Martin articulated a lawful, but false, reason for his decision, then the commissioner was warranted in inferring that by doing so Martin intended to cover up a discriminatory motive. See *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 500-501 (2001). While a finding of pretext does not lead inescapably to the conclusion that the employer who advanced it was attempting to conceal discriminatory behavior, see *Abramian* v. *President &*

ants' extensive experience performing the duties of assistant clerks, Martin's stated rationale was a pretext. Based on this and other evidence of discrimination contained in the record, the commissioner concluded that the complainants had proved by a preponderance of the evidence that they were denied a promotion on the basis of their sex.

According to the Trial Court, the two successful candidates were hired either because of their political support for Martin, or because they possessed educational or managerial backgrounds that the complainants did not. There was some support for the first theory in the record: Fitzgerald and Ginley testified that they participated in Martin's 1982 political campaign, and a letter was admitted in evidence containing a statement by Martin concerning the need to hire political supporters for assistant clerk positions. As to the allegedly superior qualifications, the evidence showed that both Fitzgerald and Ginley had college degrees, and Ginley, who had been a tax collector, had some supervisory experience. However, there was no evidence that Martin considered these factors or that, in even a general way, he had a preference for candidates with these qualifications. (Again, the clerk himself did not testify.)

The Superior Court judge, citing our decision in *Wheelock College* v. *Massachusetts Comm'n Against Discrimination, supra*, held that the commissioner had an obligation to make findings regarding each of the nondiscriminatory reasons advanced by the Trial Court. Because the commissioner failed to do so, the judge remanded the case to the commission for further consideration of the Trial Court's explanations. Our review of the record, however, indicates that the commissioner's findings were adequate and no remand is required.

The judge's decision was based on a flawed interpretation of the *Wheelock College* case. In that case we ordered a remand, not because the commissioner failed to make findings regarding all the employer's possible nondiscriminatory reasons, but rather because the commissioner entirely ignored the evidence that supported a particular motive. See *id.* at 137. That is not the

*Fellows of Harvard College*, 432 Mass. 107, 118 (2000), an employer cannot avoid the adverse inference created by advancing a false reason merely by acknowledging it as false at a later date.

situation here: the commissioner's findings acknowledged both Fitzgerald and Ginley's qualifications and their political connections to Martin.

An agency adjudicator does not have to make detailed findings concerning every aspect of the matter before him; his findings need only embrace those facts necessary to support his decision in sufficient detail to permit judicial review. See *Costello* v. *Department of Pub. Utils.*, 391 Mass. 527, 538 (1984). In this case, the commissioner's findings were perfectly adequate: he determined that sufficient evidence had been presented to establish the elements of a prima facie sex discrimination case and that Martin's proffered explanation for failing to hire the complainants was a pretext. He explained his supporting reasoning. Although the commissioner made other relevant findings, the two mentioned above were sufficient, even in the face of other potentially nondiscriminatory reasons, to support his ultimate conclusion that the complainants were denied promotion based on their sex. See *Lipchitz* v. *Raytheon Co.*, *supra* at 506-507; *Abramian* v. *President & Fellows of Harvard College*, *supra* at 118. See also *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, *supra* at 446 ("The plaintiff need not conclusively exclude all other possible explanations for the decision and prove intent beyond a reasonable doubt").

There was no need for the commissioner explicitly to reject the nondiscriminatory reasons ultimately proffered by the Trial Court because a violation of G. L. c. 151B may still occur even if those reasons played some part in Martin's decision. See *Lipchitz* v. *Raytheon Co.*, *supra* at 506 (no requirement for G. L. c. 151B plaintiff to "disprove every reason articulated by the defendant or suggested in the evidence"). Because hiring decisions are seldom made for a single reason, discriminatory and nondiscriminatory hiring motives may coexist in the mind of a decision maker. Thus, even when nondiscriminatory reasons play some role in a decision not to hire a particular applicant, that decision may still be unlawful if discriminatory animus was a "material and important ingredient" in the decision-making calculus. See *Lipchitz* v. *Raytheon Co.*, *supra* at 506 n.19. See also *Desert Palace, Inc.* v. *Costa*, 539 U.S. 90, 100-102 (2003). Here the commissioner found that the complainants

were passed over for promotion primarily because they were women.[14] Because that fact alone established a violation of G. L. c. 151B, detailed findings regarding other possible nondiscriminatory reasons were unnecessary.

*2. Remedies.*

The Trial Court contests the validity of the commissioner's awards of injunctive relief, front pay, and emotional damages. With regard to the appropriateness of the injunctive relief granted in this case, the order requiring the appointment of Cossaboom to the next available assistant clerk position was proper. Although the Trial Court argues that the commission lacks the authority to control the present clerk's hiring decisions, G. L. c. 151B, § 5, states explicitly that the commission may require an employer to hire a person against whom it has discriminated at an earlier date. *Labor Relations Comm'n v. Selectmen of Dracut*, 374 Mass. 619 (1978), cited by the Trial Court, stands for the proposition that a court cannot require successor elected officials publicly to support their predecessor's policies. See *id.* at 626. It is inapposite to this case, where Martin's elected successor is being ordered to correct an injury inflicted by the office that she now heads.

The order requiring Statewide distribution of the commissioner's decision was also within the commissioner's discretion. The commissioner found that the Trial Court, through Martin, engaged in sex discrimination.[15] When a hearing commissioner makes such a finding, G. L. c. 151B, § 5, authorizes him to order affirmative action that, "in the judgment of the commis-

---

[14]The commissioner issued his findings more than five years before our *Lipchitz* opinion. He therefore did not have the benefit of the causality formula articulated there and did not couch his findings in terms of "material and important ingredient[s]." Nevertheless, the text of the decision indicates that the commissioner believed sex-based discrimination to be the determinative cause of Martin's actions.

[15]The complainants did not argue, and the commissioner did not find, that then Chief Justice for Administration and Management (CJAM) acted with discriminatory animus when he approved Martin's decision to hire Fitzgerald and Ginley. The personnel standards enforced by the CJAM prohibit discriminatory hiring, and therefore under G. L. c. 151B, § 8, the CJAM has a duty to ensure that clerks do not discriminate. See *First Justice of the Bristol Div. of the Juvenile Court Dep't v. Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't*, 438 Mass. 387, 403-404 (2003).

sion, will effectuate the purposes" of the antidiscrimination statute. See *Katz* v. *Massachusetts Comm'n Against Discrimination*, 365 Mass. 357, 366 (1974). The commissioner has the discretion to formulate an appropriate order. See *Wynn & Wynn, P.C.* v. *Massachusetts Comm'n Against Discrimination*, 431 Mass. 655, 674 (2000). Although mandatory training programs are most frequently imposed in cases such as this one, orders requiring employers to give notice of the rights conferred by Federal and State discrimination laws are also appropriate. See *Katz* v. *Massachusetts Comm'n Against Discrimination, supra* at 367. Viewed in this light, the commissioner's decision to require a one-time distribution of the text of his decision to the Trial Court's clerical employees was neither unreasonably burdensome nor unrelated to the legitimate goals of discovering and deterring discrimination in other departments of the Trial Court. See *id.* "In G. L. c. 151B, the Legislature has given the commission broad powers to receive, investigate and act on complaints of discrimination. We will not lightly interfere with that mandate by permitting the court's judgment to be substituted for the commission's on issues that lie within the latter's designated field. To do so would render meaningless the administrative scheme enacted by the Legislature." *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444, 450 (1973).

As for the award of front pay and emotional distress damages, the commissioner determined that both were necessary to make the complainants whole. His conclusions were based on substantial evidence and therefore appropriate. See *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 387-388 (1988); *Bournewood Hosp., Inc.* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 303, 317 (1976).

The judgment of the Superior Court vacating the decision and order of the commission is reversed. A judgment is to enter affirming the decision of the commission.

*So ordered.*