JENNIFER THOMAS *vs.* EDI SPECIALISTS, INC.; STEVEN A. MILLS, third-party defendant.

Bristol. May 8, 2002. - August 15, 2002.

Present: GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Contribution. Indemnity. Anti-Discrimination Law,* Employment. *Actionable Tort. Limitations, Statute of.*

A Superior Court judge correctly dismissed an employer's third-party complaint against an employee who had been named as a primary offender in a fellow employee's discrimination action against the employer pursuant to G. L. c. 151B, where the employer had no right of contribution or indemnification against the offending employee for the alleged violations of c. 151B. [538-543]

CIVIL ACTION commenced in the Superior Court Department on October 13, 2000.

A motion to dismiss a third-party complaint was heard by *Ernest B. Murphy*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Randall T. Weeks, Jr. (Matthew C. Worthen* with him) for EDI Specialists, Inc.

*John T. Landry, III*, for Steven A. Mills.

The following submitted briefs for amici curiae:

*Cynthia L. Amara* for New England Legal Foundation.

*Thomas F. Reilly*, Attorney General, *Catherine C. Ziehl & Kathleen Z. Quill*, Assistant Attorneys General, for the Attorney General.

*Robert S. Mantell* for Massachusetts Employment Lawyers Association.

COWIN, J. We decide today whether an employer has a right of contribution or indemnification against an offending employee for alleged violations of G. L. c. 151B. Jennifer Thomas filed a discrimination action in the Superior Court pursuant to G. L.

c. 151B against her employer, EDI Specialists, Inc. (EDI). In her complaint, she names Steven A. Mills, a fellow employee, as a primary offender. EDI filed a third-party complaint against Mills seeking contribution and indemnification in the event it is found liable to Thomas. Mills moved to dismiss the third-party complaint, claiming, inter alia, that G. L. c. 151B does not provide for a right of contribution or indemnification against an employee. A judge in the Superior Court agreed with Mills and dismissed EDI's third-party complaint. We affirm.

1. *Facts and procedural background.* We summarize the relevant facts from the Superior Court's order, supplemented by relevant information from the record. EDI is an eighteen-employee company located in Massachusetts. Thomas was hired by EDI as an implementation services manager, and Mills as an operations director. In her charge of discrimination before the Massachusetts Commission Against Discrimination (commission), Thomas named EDI as the sole respondent and claimed that, after the announcement of her pregnancy, she was subjected to continuous and ongoing discrimination. Specifically, she alleged that, after becoming pregnant, she was required to document "every minute" of her time and was harassed and subjected to derogatory comments. She claimed further that after the birth of her child, she was not returned to the assignment she had before her maternity leave as she had been promised, and she was also changed from a salaried to an hourly employee.

After waiting the requisite ninety days after the filing of her complaint with the commission, see G. L. c. 151B, § 9, Thomas commenced an action in the Superior Court under G. L. c. 151B, thereby transferring the case from the commission. EDI is the only defendant named in the complaint. Thomas alleged, inter alia, that EDI unlawfully discriminated against her on the basis of sex and in connection with her pregnancy in violation of G. L. c. 151B. According to Thomas, Mills referred to her as the "Company Prego" and told her that her inability to travel was detrimental to EDI. Thomas also alleged discriminatory behavior by the company's president, Joseph Gilbody, and EDI itself for the failure to adopt company policies regarding sexual harassment and maternity leave.

EDI filed a third-party complaint against Mills seeking

indemnification and contribution. A Superior Court judge granted Mills's motion to dismiss EDI's third-party complaint, reasoning that G. L. c. 231B, § 1 (*a*), the statute providing for the right to seek contribution, only applies to tort claims, and a claim under G. L. c. 151B is not a " 'tort-like' cause of action." EDI petitioned for interlocutory review of the Superior Court's order to a single justice of the Appeals Court, who granted EDI leave to file an interlocutory appeal. We transferred the case to this court on our own motion.

2. *Discussion.* On appeal, EDI argues that an employer sued under G. L. c. 151B may seek contribution and indemnification[1] from an offending employee pursuant to G. L. c. 231B, § 1 (*a*). General Laws c. 151B, § 4, provides that "[i]t shall be an unlawful practice . . . for *an employer* . . . because of race, color, religious creed, national origin, sex, sexual orientation . . . , genetic information, or ancestry . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment . . ." (emphasis added). The statute sets forth a detailed procedure that an aggrieved employee must follow in pursuing a discrimination claim, G. L. c. 151B, § 5, and has been interpreted to allow an action against an individual employee as well as an employer. See *Beaupre* v. *Cliff Smith & Assocs.*, 50 Mass. App. Ct. 480, 490-492 (2000).

General Laws c. 151B contains no provision regarding an employer's right to seek contribution from the offending employee. However, EDI argues that contribution is permitted by G. L. c. 231B. That statute provides for a right to contribution "where two or more persons become jointly liable in tort," G. L. c. 231B, § 1 (*a*), and permits a tortfeasor to seek partial

---

[1]Although EDI maintains that it is entitled to indemnification as well as contribution, EDI does not argue separately on indemnification. EDI makes no allegation of an express or implied contractual provision for indemnity. See *Fall River Hous. Auth.* v. *H.V. Collins Co.*, 414 Mass. 10, 14 (1992). EDI apparently assumes that G. L. c. 231B, § 1 (*a*), provides a right to indemnification. Indemnification, however, is a common-law right available to one who is "without fault, [and] compelled by operation of law to defend himself against the wrongful act of another." *Santos* v. *Chrysler Corp.*, 430 Mass. 198, 217 (1999), quoting *Elias* v. *Unisys Corp.*, 410 Mass. 479, 482 (1991). The Legislature did not intend that an employer found to be in violation of G. L. c. 151B could later be considered fault free in a subsequent action for indemnity.

reimbursement from a party who is jointly liable if he has paid more than his "pro rata share" of the damages. G. L. c. 231B, § 1 (*b*). The language of the statute does not distinguish between intentional torts and negligence.

The right of contribution created by G. L. c. 231B is not limited to those causes of action that existed when the statute became effective. *Wolfe* v. *Ford Motor Co.*, 386 Mass. 95, 98-99 (1982). Rather, in deciding whether a particular statutory action supports a claim for contribution under G. L. c. 231B, we must look to whether the underlying claim is "in essence a tort claim." *Id.* at 99. See *Ankiewicz* v. *Kinder*, 408 Mass. 792, 795 (1990). Applying this principle, we have held that a defendant may seek contribution in connection with a claim of implied warranty of merchantability, *Wolfe* v. *Ford Motor Co.*, *supra*, and a claim of violation of the lead paint prevention law, *Ankiewicz* v. *Kinder, supra.* See *Framingham Union Hosp.* v. *Travelers Ins. Co.*, 744 F. Supp. 29 (D. Mass. 1990) (permitting contribution in connection with claim of unfair business practices under G. L. c. 93A).

EDI maintains that a discrimination action under c. 151B, like the statutes described above, "sound[s] in tort," and thus permits third-party actions for contribution. Although we have, at times, analogized discrimination actions to tort actions, see, e.g., *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 224 (1994); *Conway* v. *Electro Switch Corp.*, 402 Mass. 385, 387-388 (1988), in other contexts, we have distinguished discrimination actions from tort actions. See *Jancey* v. *School Comm. of Everett*, 421 Mass. 482, 501 (1995), *S.C.*, 427 Mass. 603 (1998) ("acts of discrimination — whether intentional or unintentional — do not thereby become torts"). See also *McMillan* v. *Massachusetts Soc'y for the Prevention of Cruelty to Animals*, 168 F.R.D. 94, 97 (D. Mass. 1995) (holding that statutory cap on tort damages recoverable against charitable organizations not applicable to claims brought under c. 151B). Our prior cases recognize that, in some but not all respects, actions brought under G. L. c. 151B are analogous to tort actions. Even if G. L. c. 151B can be considered "tort-like" for some purposes, allowing an action for contribution would undermine the statute's

complex and detailed procedures; the Legislature could not have intended such a result.

General Laws c. 151B sets forth a comprehensive scheme for the resolution of discrimination claims. *Guzman* v. *Lowinger,* 422 Mass. 570, 571 (1996). *Melley* v. *Gillette Corp.,* 19 Mass. App. Ct. 511 (1985), *S.C.,* 397 Mass. 1004 (1986). A complainant may pursue a remedy either through administrative proceedings within the commission or through the judicial system. G. L. c. 151B, §§ 5, 9. However, a complainant under G. L. c. 151B must meet certain procedural requirements before proceeding in the courts, *East Chop Tennis Club* v. *Massachusetts Commission Against Discrimination,* 364 Mass. 444, 448 (1973); *Melley* v. *Gillette Corp., supra* at 512, and is not permitted to withdraw the case until the completion of a ninety-day waiting period unless "a commissioner assents in writing" to an earlier withdrawal. G. L. c. 151B, § 9.

Allowing a right of contribution would interfere with the Legislature's preference for resolving the proceedings at the administrative level. *Charland* v. *Muzi Motors, Inc.,* 417 Mass. 580, 585 (1994), quoting *Melley* v. *Gillette Corp., supra* at 513 (referring to "legislative preference for an administrative solution"). The administrative process provides a defendant with notice and the opportunity for conciliation. G. L. c. 151B, § 5. Courts have recognized "the importance under c. 151B of sufficient notice being provided in the [commission] filing of the charges being made and of the parties deemed responsible, so as to allow both the opportunity to attempt early conciliation and a fair opportunity to litigate the issues raised." *Beaupre* v. *Cliff Smith & Assocs.,* 50 Mass. App. Ct. 480, 492 (2000), citing *Chatman* v. *Gentle Dental Ctr. of Waltham,* 973 F. Supp. 228, 235 (D. Mass. 1997). The commission's regulations do not provide a method by which a defendant may join a third party, thereby potentially depriving a third-party defendant of the opportunity to participate in the administrative process. *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination,* 423 Mass. 7, 13 (1996) ("The investigating commis-

sioner denied the school committee's motion to join the union as a party-respondent because the commission has no rule allowing for third-party practice").[2]

Further, the short statute of limitations of G. L. c. 151B conflicts with the longer period of time in which a defendant may seek contribution under G. L. c. 231B. At the time of this case, claims under G. L. c. 151B were lost if not brought within six months of the offending conduct.[3] G. L. c. 151B, § 5. However, an action for contribution may be commenced as late as "one year after the judgment has become final by lapse of time for appeal or after appellate review." G. L. c. 231B, § 3 (c).

The present case exemplifies the potential procedural pitfalls if we permit a defendant to assert a third-party complaint for contribution. Mills was not named as a respondent by Thomas in her original or amended complaint before the commission. In addition, EDI filed its third-party complaint against Mills only after the case had proceeded to court and after the six-month statute of limitations had expired. Thus, Mills was not afforded the administrative protections provided under G. L. c. 151B, and EDI's late filing of the complaint deprived him of the benefit of the short limitations period of G. L. c. 151B. Engrafting a right to contribution would conflict with the remaining provisions of the statute and undermine the importance of its specific procedures. We cannot infer that the Legislature intended such a result.

In addition, allowing a claim for contribution would circumvent the purposes of G. L. c. 151B. The language of the statute provides that an "employer" may be liable for

[2]The commission has previously recognized a right of contribution under G. L. c. 231B against a union jointly liable for the discrimination. See Angelli *vs.* Lynn Sch. Comm., No. 81 BEM 0275 (1985). See also *School Comm. of Brockton* v. *Massachusetts Comm'n Against Discrimination*, 423 Mass. 7, 13 (1996). In the *Angelli* case, however, the third-party procedure was not needed to reach the union, as the complainants had named both the employer and the union in their complaint. Angelli *vs.* Lynn Sch. Comm., *supra*. The commission was thus faced with the complainants' direct claims against both respondents, and did not have to confront the problems posed when a named respondent, not the claimant, seeks to bring another respondent into the case.

[3]The time for filing such complaints has since been extended to 300 days. See St. 2002, c. 223, § 1.

discriminatory acts committed "by himself or his agent." G. L. c. 151B, § 4. The statute also directs employers to adopt certain policies to prevent discrimination. See, e.g., G. L. c. 151B, § 3A. Thus, the statute clearly evinces an intent to reduce discrimination in the workplace by holding employers responsible for the discriminatory actions of their employees, regardless of whether these actions were authorized or supported by the employer or its policies. Although our conclusion may burden the employer who bears sole liability for the unauthorized conduct of an employee, that appears to be precisely what the Legislature intended. We also note that employers may protect their interests by contracting with employees for indemnification and enforcing that contract in a separate action, if the employer is held liable for the employee's discriminatory behavior.

The United States Supreme Court has reached a similar result in interpreting Title VII of the Civil Rights Act of 1964, the analogous Federal discrimination statute. *Northwest Airlines, Inc.* v. *Transport Workers Union,* 451 U.S. 77, 80-81 (1981). The Court reasoned that there is no Federal statutory right to contribution; Title VII was enacted solely to establish a statutory right of employees against employers, not to benefit employers; and the comprehensive nature of the remedial and enforcement schemes "expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies." *Id.* at 91-94. As discussed above, c. 151B, like its Federal counterpart, was enacted to eliminate discrimination by employers against employees through a comprehensive enforcement scheme. Although c. 151B, unlike Title VII, allows for the personal liability of individual employees, *Beaupre* v. *Cliff Smith & Assocs., supra* at 490-491, we find the reasoning of the *Northwest Airlines* case convincing. *College-Town, Div. of Interco, Inc.* v. *Massachusetts Comm'n Against Discrimination,* 400 Mass. 156, 163 (1987) ("In interpreting our statute, we may look to the interpretations of Title VII of the analogous Federal statute . . . "). As judges, we cannot amend the legislative scheme by "adding to [it] another private remedy not

authorized by [the Legislature]." *Northwest Airlines, Inc.* v. *Transport Workers Union, supra* at 94.[4]

*Judgment affirmed.*

---

[4]We recognize that other jurisdictions have allowed actions for contribution under their own discrimination statutes. See *Degener* v. *Hall Contracting Corp.*, 27 S.W.3d 775 (Ky. 2000); *Donajkowski* v. *Alpena Power Co.*, 460 Mich. 243, 248-250 (1999) (permitting a third-party claim against union in gender discrimination claim); Flaherty *vs.* S.D. Warren Co., U.S. Dist. Ct. No. 98-254-P-H (D. Me. Jan. 26, 1999); *Rodolico vs. Unisys Corp.*, 189 F.R.D. 245, 250 (E.D.N.Y. 1999) (same); *Biggs* v. *Surrey Broadcasting Co.*, 811 P.2d, 111, 114-115 (Okla. Ct. App. 1991) (permitting counterclaim claim for indemnification by employer against employee in gender discrimination claim). As recognized in these decisions, there may be many sound policy reasons favoring an award of contribution. We are of the view, however, that those policy considerations are for the Legislature to weigh, and we will not engraft provisions that the Legislature has not enacted onto the very detailed procedures of G. L. c. 151B.