Curtin, J.
This is an action for the defendant’s breach of an insurance contract in denying the plaintiffs claim for the replacement cost of an apartment building roof damaged by ice and snow. After a jury verdict for the plaintiff, the defendant filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal challenging both the sufficiency of the evidence to support the jury’s award of damages and the trial judge’s refusal to reduce that award by the amount of the plaintiff’s prior G.L.c. 231B, §4 settlement with third parties. The plaintiff cross-appealed on a charge of error in the trial judge’s denial of his motion for an additur ánd in the exclusion of evidence he contends would have substantiated his claim for increased damages.
The record indicates that plaintiff Mohammed Akbarian (“Akbarian”), as trustee of the RAJ Realty Trust, owned a 24-unit apartment building on Mt. Auburn Street in Watertown. In December, 1990, Akbarian contracted with Roberto Brothers Roofing (“Roberto”) to install a new roof on the building for $15,500.00. In early 1991, Roberto placed a fiberboard insulation layer over the building’s existing asphalt (tar and gravel) roof and covered that with a rubber membrane roof. Gencorp, Inc. (“Gen-corp”), the polymer roof manufacturer, issued a ten year warranty on both the project materials and Roberto’s workmanship.
In January, 1996, Akbarian was notified of damage to the interior of the apartment building. He hired William DePiano (“DePiano”), a public adjuster, to handle his building insurance claim against the defendant, Public Service Mutual Insurance Company (“PSM”). DePiano inspected the building and found interior water damage in the top floor hallway and first floor main entrance caused by the “thawing of ice and snow.” After DePiano and PSM’s adjuster agreed on both the cause and amount of the damage, PSM paid Akbarian $4,016.00 for his loss.[2]
Approximately six months later, Akbarian learned that there were problems with the roof structure itself and again retained DePiano. DePiano testified at trial that he inspected the roof and determined that severe winter storms had caused snow and ice to penetrate through the building’s exterior into the fiberboard between the asphalt and rubber roofs, and had caused the rubber membrane to freeze and snap; *88 and that continued water and melting ice in the fiberboard layer left the damaged rubber roof soft and spongy. Akbarian had the roof replaced, and filed a claim with PSM for properly damage in excess of $40,000.00. PSM denied the claim on the ground that the snow and ice damage to the roof was caused by the defective workmanship of Roberto Brothers Roofing and was thus excluded from coverage.[3]
Akbarian responded by commencing suit in the Superior Court against Roberto for negligent roofing work, against Gencorp for breach of its warranty of that work, and against PSM for breach of contract. Additional counts against Gencorp and PSM alleged G.L.c. 93A violations. PSM filed cross-claims against Roberto and Gencorp for indemnification and subrogation. Akbarian signed a settlement agreement prepared by Roberto and Gencorp releasing them from all liability to both Akbarian and PSM upon their payment of $18,000.00. Although notified of the settlement proposal releasing its cross-claims, PSM neither participated, nor filed any objections. On June 2, 1999, the Superior Court approved the settlement agreement pursuant to G.L.c. 231B, §4 on the basis that there was “no opposition by the non-settling party.” Akbarian then stipulated to the dismissal of its G.L.c. 93A count against PSM. On October 19, 2001, the Superior Court dismissed Akbarian’s remaining breach of contract claim against PSM for its failure to satisfy the $25,000.00 jurisdictional amount set by St. 1996, c. 358. Akbarian refiled its action against PSM for breach of contract in the Waltham District Court on October 25,2001.[4]
PSM moved for a directed verdict at both the close of Akbarian’s case and the conclusion of all the evidence on the ground that the evidence was insufficient to support any recovery by Akbarian. The motions were denied. As noted, the jury found for Akbarian and awarded him $13,000.00 in damages. The trial judge denied that portion of Akbarian’s post-trial motion to amend the judgment or for a new trial which sought an additur, but allowed Akbarian’s claim for interest from the date of the commencement of the original Superior Court suit. The trial court also denied PSM’s motion for judgment notwithstanding the verdict, as well as its subsequent “motion for reconsideration” requesting a set-off of the $18,000.00 Roberto-Gencorp settlement payment. This appeal and cross-appeal followed.
1. Contrary to PSM’s initial argument on its appeal, there was no error in the trial court’s refusal to reduce the jury’s award of damages by the settlement Akbarian received from Roberto and Gencorp.
PSM necessarily concedes that the Superior Court’s approval of the settlement agreement releasing Roberto and Gencorp from all liability extinguished any rights PSM may have had to subrogation and indemnification by those parties. By failing either to participate in settlement negotiations or to object to the agreement prior to its approval, PSM effectively waived those claims for reimbursement. As a practical matter, PSM’s demand for a set-off in this action amounted to little more than an attempt to obtain a partial recovery on those claims. PSM’s contention is that its demand is instead one for “contribution” to which it is entitled because the settlement agreement was approved pursuant to G.L.c. 231B, §4. That statute does not apply, however, to what are essentially indemnification claims. Elias v. Unisys Corp., 410 Mass. 479, 482-483 (1991). The statute provides as follows:
*89 When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury: (a) It shall not discharge any of the other tortfeasors from liability for the injury unless its terms so provide; but it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it. which is the greater [emphasis supplied].
Thus, by its express terms, both the statute and the right of contribution it creates apply only to joint tortfeasors. Elias v. Unisys Corp., supra at 480-481. A defendant has a right to contribution only if the claim against him is “in essence a tort claim.” Thomas v. EDI Specialists, 437 Mass. 536, 539 (2002). As Akbarian’s sole surviving claim against PSM in this District Court action was for breach of the parties’ insurance contract, PSM’s demand for a contribution set-off was properly denied.
2. PSM’s second argument on its appeal is that the evidence was insufficient to support the jury’s award of $13,000.00 in damages to Akbarian. The denial of PSM’s motion for judgment notwithstanding the verdict on this issue must be affirmed if “anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor” of Akbarian. Raunela v. Hertz Corp., 361 Mass. 341, 343 (1972); Lawrence Savings Bank v. Levenson, 59 Mass. App. Ct. 699, 703 (2003). Viewing the evidence in the light most favorable to Akbarian, Christopher v. Father’s Huddle Cafe, Inc., 57 Mass. App. Ct. 217, 219 (2003), we conclude that the evidence, however minimal, was legally sufficient to permit the damages awarded herein.
DePiano, Akbarian’s adjuster, testified that he “walked” the entire roof during his inspection at the end of the summer in 1996, and that the roof measured approximately 3,000 to 4,000 square feet. O’Brien, PSM’s expert, testified that the cost of a new roof would be $2.50 to $3.00 per square foot if only new fiberboard and a new rubber membrane were installed, and $4.00 per square foot if the underlying tar and gravel roof was also replaced. In addition, the jury saw photographs of the roof and a diagram. Because damages need not be proven with “mathematical certainty,” Kitner v. CTW Transport, Inc., 53 Mass. App. Ct. 741, 748 (2002), Akbarian’s damages could have been properly assessed without evidence of the exact roof size or of a specific dollar replacement cost. In determining damages, a jury “may proceed to some extent on ‘estimate and judgment, sometimes upon meager evidence.’” Wing v. Durkee, 10 Mass. App. Ct. 924 (1980), quoting Piper v. Childs, 290 Mass. 560 (1935). The $13,000.00 damages award in this case appears to be the result of a proper application by the jury of a $4.00 per square foot replacement cost to a roof measuring approximately 3,250 square feet. The damages were thus “reasonably ascertainable from the evidence.” Dalton v. Demos Bros. General Contractors, Inc., 334 Mass. 377, 378 (1956), and “an element of uncertainty” in their calculation was not a bar to recovery. Id. at 378-379.
3. Turning to Akbarian’s cross-appeal, it is not surprising that he asserts that the jury verdict was proper on the basis of the evidence admitted at trial. Akbarian contends, however, that he was prevented from establishing the full extent of his actual damages by the trial court’s erroneous exclusion of testimonial and documentary evidence of roof repair estimates, bills and payments which he offered. A trial judge enjoys “an abundance of discretion” in ruling on evidence, Zucco v. Kane, 439 Mass. 503, 507 (2003), and his or her decision to exclude evidence will be sustained on appeal “if it can be supported on any legal ground.” Rubin v. Arlington, 327 Mass. 382, 385 (1951). There was no error.
Akbarian attempted to introduce a repair estimate and various invoices totaling $45,325.00 on the basis of nothing more than his own and DePiano’s testimony that they had received these documents. The documents were never offered *90 through the testimony of the roofers and repairmen who prepared them and who may have performed the services listed therein. Those repairmen were never called as witnesses. The documents were thus properly excluded as inadmissible hearsay because they constituted statements by out-of-court declarants offered as substantive evidence to prove the truth of their contents, Commonwealth v. Silanskas, 433 Mass. 678, 693 (2001); namely, that the total charges of $45,325.00 listed on the bills constituted the reasonable cost of roof replacement for which Akbar-ian was entitled to insurance compensation from PSM.
The invoices in question and Akbarian’s checks in full payment thereof could have also been correctly excluded on the grounds of relevance. DePiano testified at trial that he observed no additional interior damage to the building beyond that covered by PSM’s $4,016.00 payment to Akbarian in February of 1996. There was no other testimony as to the existence of any supplemental interior damage. Yet the $33,360.00 roofing work invoice by John DeCourcey Roofing Co. (“DeCourcey”) and Akbarian’s checks to DeCourcey for the same included undisclosed costs for front entry work for which PSM had presumably made payment in 1996. DeCourcey’s invoice also listed other work, including new drains and brick pointing, which appeared unrelated to the roof replacement which was the basis of Akbarian’s insurance claim against PSM. Similarly, invoices from, and payments to, A.R.S. Services, Inc. (“A.R.S.”) in the total amount of $12,200.00 covered general repairs unrelated to the roof replacement, including securing an upstairs railing, installing a “high traffic floor covering” in the elevator, painting the elevator doors and “polish[ing] chrome as well as possible.” The A.R.S. invoice also listed interior work which appeared to be repairs for which Akbarian had already been compensated or which were not part of the roofing work. These included patching ceilings, window sills and “miscellaneous cracks” and painting ceilings, walls, woodwork and railings.
The trial court also properly excluded testimony by Akbarian and DePiano as to the contents of these repair invoices. Such testimony would have been impermis-sibly based on hearsay, see Downey v. Union Trust Co. of Springfield, 312 Mass. 405, 416-417 (1942), rather than on facts already in evidence or on data independently admissible. See Sacco v. Roupenian, 409 Mass. 25, 29-30 & n.3 (1990) (basis for expert testimony). Akbarian’s status as the trustee-owner of the building did not qualify him to introduce purely hearsay evidence as to the cost of the repairs at issue in this action. Nor was any proper foundation laid as to Akbarian’s familiarity, knowledge and experience with the property so as to permit his opinion testimony of the value or diminution in value of the apartment building in consequence of the roof damage. See generally Von Henneberg v. Generazio, 403 Mass. 519, 524 (1988). Compare Brossi v. Fisher, 1999 Mass. App. Div. 99, 103-104, aff’d 51 Mass. App. Ct. 543, 549 (2001). Akbarian did not in fact offer any testimony as to property value, and the record does not establish that Akbarian knew of the specific nature and extent of the damage and the particular work undertaken to repair it.
4. At the close of PSM’s evidence and in an eleventh hour effort to secure additional evidence of damages, Akbarian asked to reopen his own case to call PSM’s adjuster, George Kobaly (“Kobaly”), to the stand. PSM had listed Kobaly as a witness, but ultimately elected not to call him. Akbarian’s counsel represented to the court that he expected to question Kobaly about repair estimates and proposals he may have received. Such questions would have been subject, however, to the same successful objections on hearsay grounds as made to Akbarian’s and DePiano’s attempted testimony about estimates and invoices they had received. ‘The decision to permit a plaintiff to reopen his case and to offer additional evidence is one well within the sound discretion of the trial judge.” Dew v. Laufaci, 2001 Mass. App. Div. 95, 96 and cases cited. There was clearly no abuse of that discretion in the denial of Akbarian’s motion to reopen, particularly in view of his failure to *91 demonstrate that his intended examination of Kobaly would have produced material, or even admissible, evidence.
5. Finally, a motion for a new trial on the ground of inadequate damages or a request for an additur rests within the discretion of the trial judge. Loschi v. Massachusetts Port Auth., 361 Mass. 714, 715 (1972). Given the absence of any evidence adduced at trial that the jury’s $18,000.00 award was “greatly disproportionate,” Id., to Akbarian’s actual damages, there was no abuse of discretion in tire denial of Akbarian’s additur motion.
Judgment affirmed. The parties’ appeals are dismissed.
So ordered.

 The parties agreed that the full “repair or replacement” cost of the interior damage was $6,311.00. Depreciation of $1,295.00 and a policy deductible of $1,000.00 were then subtracted to arrive at the $4,016.00 figure.

 Thomas M. O’Brien, PSM’s roofing expert, testified at trial that it was Roberto’s improper installation of flashing, not severe winter weather, that caused snow and ice to enter into the fiberboard roof insulation. Akbarian argued at trial that PSM was liable in either event because the policy exclusion for faulty workmanship did not apply when that workmanship resulted in a covered loss from snow and ice. PSM does not contest its contractual liability on this appeal.

 Although the District Court complaint included a G.L.c. 93A count, the parties agree that such claim against PSM had been dismissed in the Superior Court.