Greco, J.
This is an appeal by the defendant-supermarket, Demoulas Supermarkets, Inc. (“Demoulas”), after a jury verdict for its customer, plaintiff Rita DiCarlo (“DiCarlo”), who slipped and fell on store premises. Demoulas argues on appeal that (1) the evidence was insufficient as a matter of law to warrant the jury’s finding of negligence, and (2) the trial judge erred in admitting certain medical records and a photograph of the scene of the fall into evidence.
The facts are fairly straightforward. There was evidence that on May 26, 2000, the Friday before the Memorial Day weekend, DiCarlo was shopping with her husband in Demoulas’ Somerville store in the middle of the day. The store was crowded. The DiCarlos proceeded to the dairy department, both pushing their own shopping carriages. In the middle of that department, there were two refrigeration coolers side by side. Each cooler was about waist high and four to five feet long. Items for sale were in the coolers and displayed at the ends of the coolers. There were also boxes stacked on the floor. DiCarlo approached one of the coolers by pulling her carriage and backing toward it. As she did so, she tripped and fell over a foot high, brown box in front of one of the coolers. There was no direct evidence of how long the box had been there or how it got there. While there were no Demoulas employees directly by the cooler, there were “young boys” in blue uniforms stacking shelves in the area. After DiCarlo fell, an assistant manager of the store came by, apologized to her and stated that the box should not have been there.
When DiCarlo went to the emergency room at the Lahey Clinic on the evening of the accident, she stated that she had fallen on her right side. At trial, however, she testified that when she fell, she turned her knee and hit her head and elbow on either the floor or the cooler. DiCarlo’s husband testified that he saw her knees strike the floor. They both testified that after the accident, she had bruises on her left knee. From May through November, 2000, DiCarlo experienced a burning sensation in her left knee and pain when she bent the knee in a certain way. She had no additional falls during that period. Her knee improved over the course of the year following the fall, but still “botherfed her] once in a while” even at the *80 time of trial in May, 2005. On two occasions in 2000, it became swollen and infected. DiCarlo also testified, however, that she never sought treatment for her knee until October of 2000. During that October and the following month, DiCarlo was seen repeatedly at the Lahey Clinic concerning the pain and swelling in her left knee. On November 8, 2000, she complained about that pain which she stated had persisted from the accident. She testified at trial that she had last received treatment for her knee in 2001, and that she had a prior “medial meniscus tear” of her right knee several years before her fall at the Demoulas store. DiCarlo further testified that her right elbow bothered her during the same period of time.
1. Sufficiency of the evidence. Demoulas sought to test the sufficiency of the evidence throughout the proceedings by motions for a directed verdict at the close of the plaintiffs case and the close of all the evidence, and by motion for a judgment notwithstanding the verdict. Those motions all raised the same issue; i.e., “whether the evidence, taken in a light most favorable to [DiCarlo], without considering its weight or credibility, was adequate to support an inference imposing liability on [Demoulas].” Sahagan v. Commonwealth, 25 Mass. App. Ct. 953 (1988). See also Akbarian v. Public Service Mut. Ins. Co., 2004 Mass. App. Div. 87, 89. As was the case in Akbarian, “the evidence, however minimal, was legally sufficient to permit the damages awarded herein.” Id.
To warrant the case going to the jury and to permit the jury’s verdict to stand, DiCarlo had to present evidence from which the jury could reasonably conclude “that her fall was proximately caused by a dangerous condition on the defendant’s premises ‘which the defendant created, had actual knowledge of, or should have discovered and corrected in the exercise of reasonable care.” Morse v. The Stop & Shop Supermarket Co., 2001 Mass. App. Div. 159, 160, quoting Muse v. Foodmaster Super Market, 2000 Mass. App. Div. 137, 138. Liability can be premised on any one of those three scenarios. See Oliveri v. Massachusetts Bay Transp. Auth., 363 Mass. 165, 167 (1973). The evidence would have permitted the jury to find that the box was left in front of the cooler by a Demoulas employee. There were employees in the area putting products out for sale. The box was of a weight and size that jurors, from their life experiences, could have concluded was certainly not the type of item a customer would bring into a store. Moreover, there was no evidence that an outside vendor may have put the box there because the only evidence of non-Demoulas employees putting products on display related to Coca-Cola, and there was evidence from which the jury could have inferred that this was not a box of Coca-Cola. In sum, at a very busy time, the defendant-store left a box, which was not clearly visible because of its height and not easily pushed aside because of its weight, right in the path to sale items to which the store was attracting its customers. Compare Goldberg v. F.W. Woolworth Co., 1992 Mass. App. Div. 230, 232 (no evidence “as to the number, size, weight, stacking or placement of ... window shade boxes which would permit an inference that the location of the boxes along one side of the store aisle constituted a condition dangerous to the defendant’s store patrons.”) To be sure, DiCarlo was not blameless, but the jury took that into consideration in finding twenty-percent (20%) comparative negligence.
2. Medical Records. By way of a motion in limine before the jury was empaneled, Demoulas sought the exclusion of various medical records relating to the treatment of DiCarlo’s knee and elbow. In denying the motion, the trial judge cast doubt on the admissibility of the records and indicated that his ruling was intended to avoid any issue on appeal. In so doing, he was not heeding his previously expressed reluctance to rule on motions in limine without “knowing] the context... in which the evidence is [going to] be offered.” Demoulas correctly notes that in none of the medical records in question did a doctor causally link diagnosis and treatment of DiCarlo’s knee and elbow injuries to her fall at the market. However, the jury heard how DiCarlo fell from both DiCarlo, herself, and her *81 husband. The jury also had before it evidence of her prior knee problems and her history of treatment from the time of the fall and during the ensuing years. In the circumstances of this case, the Appeals Court’s recent statement, albeit by way of dictum, applies:
[T]he injuries complained of..., regardless of denomination, are not so highly technical as to require greater specificity in causation by way of expert opinion. ... Causation is, fairly, a matter of degree, and clearly there are cases involving medical issues where no expert opinion whatsoever would be necessary to establish legal causation.
Bailey v. Cataldo Ambulance Serv., Inc., 64 Mass. App. Ct. 228, 236 n.6 (2005).
3. Admission of photograph. There was no error in the admission of a photograph of the refrigeration coolers taken by DiCarlo’s husband a week or two after her fall.
A photograph is admissible in evidence if verified by a witness that it is a true and fair representation of the subject matter at issue at the relevant time.... The sufficiency of a photograph’s verification is a question of fact committed to the discretion of the trial judge ... [whose] ‘action will not be revised unless plainly wrong.’
Rosenthal v. Weckstein, 19 Mass. App. Ct. 944, 945-946 (1985), quoting Horowitz v. Bokron, 337 Mass. 739, 742-743 (1958). There was no error here. DiCarlo testified that the photograph fairly and accurately depicted the location where she fell. She further testified as to any differences in how the scene looked in the picture and at the time of her fall. The trial judge could well have concluded that the picture would help the jury visualize the scene and the nature of the refrigeration equipment in question.
4. Jury Instructions. The defendant also argues that the trial court erred in failing to instruct the jury, as requested, that “[a] defendant cannot be held responsible for the acts or failures to act of any persons other than its own employees, servants or agents” and that a “defendant is responsible only for the actions or failures to act of the employees, servants or agents subject to its control.” There was no error. The court clearly instructed the jury that Demoulas, acting through its employees, “had a duty to take reasonable care to avoid causing injury to someone in the defendant’s position.” There was nothing in the court’s instructions that would have in any way intimated that Demoulas was responsible for the acts of persons other than its own employees. And there was no evidence injecting such an issue into the case. As noted above, the only reference at trial to the acts of non-employees related to vendors employed by Coca-Cola who had nothing to do with the stocking of the dairy department. Thus, there was also no error when the trial judge, in reviewing the verdict slip, stated: “Duty, which I can tell you was present. You don’t need to worry about duty.” This case was not about whether there was a duty owed to the plaintiff, but whether there was a breach of that duty.
Judgment affirmed.
So ordered.