2023 IL App (1st) 221018

FIRST DISTRICT
THIRD DIVISION
May 24, 2023

No. 1-22-1018

| | |
|---|---|
| KILEY SAUNDERS and SARAH SCANLON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs-Appellants, | ) Cook County |
| | ) |
| v. | ) |
| | ) |
| ORBITZ WORLDWIDE, LLC and RAMSES MEIJER, Individually, | ) No. 2020 L 05809 |
| | ) |
| | ) |
| Defendants, | ) |
| | ) |
| (Orbitz Worldwide, LLC, | ) |
| | ) |
| Third-Party Plaintiff-Appellee | ) |
| | ) |
| v. | ) |
| | ) |
| Havas Chicago Worldwide, LLC, | ) Honorable |
| | ) Preston Jones, Jr. |
| Third-Party Defendant-Appellee). | ) Judge, Presiding |

**OPINION**

JUSTICE DEBRA B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice McBride and Justice Burke concurred in the judgment and opinion.

¶ 1    Plaintiffs, Kiley Saunders and Sarah Scanlon, appeal the trial court's judgment that the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/0.01 *et seq.* (West 2020)) applied to set off a portion of their settlement with Havas Chicago Worldwide, LLC (Havas), against a potential judgment in their case against defendants Ramses Meijer and Orbitz Worldwide, LLC (Orbitz). On appeal, plaintiffs contend that the trial court's determination was

error where (1) Havas was not a party subject to liability in tort under the Contribution Act, and (2) the civil rights violations caused by Havas' misconduct were distinct from the tort injuries caused by Orbitz's misconduct. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiffs were employed by Havas, an advertising and marketing company. In November 2017, Expedia Group, Inc. (Expedia) hired Havas to create an advertising and marketing campaign for Orbitz. Meijer managed the Orbitz project and worked directly with Havas employees, including plaintiffs.

¶ 4     In December 2019, plaintiffs filed separate charges against Havas with the Illinois Department of Human Rights (Department), claiming that they were subjected to sexual harassment and a hostile work environment. Both received a "Notice of Opt Out" of the Department's investigative and administrative process, and the Department notified them of their right to commence an action in circuit court.

¶ 5     On May 29, 2020, plaintiffs filed a 20-count complaint against Havas, Expedia, and Meijer, alleging violations of the Gender Violence Act (740 ILCS 82/1 *et seq.* (West 2020)), negligence, sexual assault in violation of the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2020)), assault, battery, and intentional infliction of emotional distress. Plaintiffs alleged that Meijer raped them after an Expedia-sponsored social event.

¶ 6     In the complaint, plaintiffs alleged that "Expedia fostered and condoned a corporate culture that tolerated and promoted sexually-harassing and abusive conduct toward women." Meijer had a "long history" of harassing women, which was "well-known at Expedia." Senior-level executives at Expedia knew of Meijer's propensity to make sexual comments toward women, massage the shoulders of women on his team, and kiss them on the cheek. One supervisor expressed concern

to plaintiffs about Meijer's behavior during work-related social outings. Despite this knowledge, Meijer's team members "routinely made efforts to explain away [his] lewd, uncomfortable, and sexually charged language as a vestige of his European upbringing." Plaintiffs alleged that Expedia's failure to address Meijer's "sexually harassing behavior," or discipline him, fostered "a toxic and hostile work environment for women who worked with" Meijer. "As a direct and proximate result thereof, [plaintiffs] suffered severe emotional distress, anxiety, humiliation, anguish, embarrassment, degradation, loss of enjoyment of life, and mental pain and suffering."

¶ 7       Havas' employment practices also created "a hostile and sexually-charged and harassing work environment." Havas' sexual harassment policies and training failed to instruct employees on handling sexually harassing behavior, nor did Havas provide a mechanism for confidential reporting of misconduct. Rather, "the culture promoted at Havas was that of the quintessential 'boys club,' " where work-related outings consisted of "alcohol-infused social events and company-expensed trips to strip clubs." Havas employees were "encouraged and expected to attend happy hours and other social events with clients to maintain and strengthen client relationships."

¶ 8       After Havas secured Expedia's business, Havas management "made clear to its employees that keeping the client happy was a top priority." As a result, female employees believed they had to endure Meijer's "increasingly sexual comments and physical conduct with Havas female employees." Although Havas management witnessed Meijer's "frequent sexual comments and unwanted physical contact" with female employees, they did nothing "to prevent the foreseeable attacks" on plaintiffs. "Instead, Havas valued the lucrative contract with its client Expedia over the safety and well-being of its employees."

¶ 9    Plaintiffs alleged that Havas "failed to take corrective measures to eliminate the ongoing sexual harassment" and, as "a direct and proximate result of Defendant Havas' actions and failure to address the hostile work environment caused by [Meijer's] sexual harassment," each plaintiff has "lost and will continue to lose, income and other employment benefits and has suffered physical and emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses."

¶ 10    On August 4, 2020, plaintiffs entered into a confidential settlement agreement with Havas. Plaintiffs moved for leave to file an amended complaint that removed Havas but added Orbitz as a defendant. On September 16, 2020, Havas was dismissed from the action with prejudice.

¶ 11    On January 6, 2021, the trial court dismissed Expedia from the action where uncontroverted affidavits established that Orbitz, not Expedia, employed Meijer. On February 8, 2021, plaintiffs filed their second-amended complaint which removed Expedia as a defendant. Orbitz filed a motion to dismiss, and the trial court granted the motion as to all counts except those alleging negligent retention and supervision of Meijer. The negligence counts asserted that Meijer was acting within the course and scope of employment at all relevant times and that he was unfit to work directly with women and posed a danger to them. Orbitz knew or should have known of the risks in employing Meijer. Plaintiffs sought compensatory and punitive damages, damages for emotional distress, and interest and costs.

¶ 12    On June 14, 2021, Orbitz filed a third-party complaint against Havas for contribution. Havas filed a motion for a good faith finding on the settlement and dismissal of the third-party complaint. On March 4, 2022, the trial court granted Havas' motion, finding that the settlement between plaintiffs and Havas was reasonable and made in good faith. The proposed order stated that Havas was discharged from all liability for contribution under the Contribution Act.

¶ 13    Although Orbitz did not object to the proposed order, it wanted an amendment providing that if plaintiffs obtained a judgment against Orbitz on the remaining counts, Orbitz was entitled under the Contribution Act to a set off "equal to the full amount of the settlement between Plaintiffs and Havas." Plaintiffs did not agree with the amendment. On June 10, 2022, after briefing and oral argument, the trial court entered an order finding that the Contribution Act applied and, as a result, Orbitz was entitled to a setoff of 30% of the total settlement. This represented the settlement amount allocated for pain and suffering damages. The order gave Orbitz 30 days from the close of discovery in which to file a motion to reconsider the setoff amount.

¶ 14    The order further stated that the court's finding that the Contribution Act applied was "a final judgment" and, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016), there was no just reason to delay enforcement or appeal of that ruling. The order did not include the court's finding that the settlement was reasonable and made in good faith, or its calculation of the amount of setoff, in its final judgment determination. On July 8, 2022, plaintiffs filed this appeal.

¶ 15                                    II. ANALYSIS

¶ 16    Plaintiffs contend that the trial court erred in finding that the Contribution Act applied to their case where Havas was not a party subject to liability in tort, and the injuries caused by Havas' misconduct were not the same injuries caused by Orbitz's misconduct. This issue involves interpretation of the Contribution Act, which we review *de novo*. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 332 (2002).

¶ 17    The Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, *** there is a right of contribution among them, even though judgment has not been entered against any or all of them." 740 ILCS 100/2(a) (West 2020). This right of contribution exists for a tortfeasor "who has paid more than his pro rata

- 5 -

share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share." *Id.* § 2(b). When a party liable in tort arising out of the same injury enters into a settlement agreement in good faith, the recovery on any claim against the other tortfeasors may be reduced by any amount stated in the agreement. *Id.* § 2(c).

¶ 18    The Contribution Act furthers two important public policies by encouraging settlements and equitably apportioning damages among tortfeasors. *Sperl v. Henry*, 2018 IL 123132, ¶ 32. To that end, the Contribution Act focuses "on the culpability of the parties rather than on the precise legal means by which the plaintiff is ultimately able to make each defendant compensate [them] for [their] loss." *Doyle v. Rhodes*, 101 Ill. 2d 1, 14 (1984). The contribution between tortfeasors " 'is not a recovery for the tort but the enforcement of an equitable duty to share liability for the wrong done.' " *Id.* (quoting *Puller v. Puller*, 110 A.2d 175, 177 (Pa. 1955)).

¶ 19    For contribution to apply, however, the Contribution Act requires that the parties be "subject to liability in tort arising out of the same injury." 740 ILCS 100/2(a) (West 2020). Liability in tort in this context means *potential* tort liability determined at the time of the plaintiff's injury. *Raab v. Frank*, 2019 IL 124641, ¶ 21. A "tort" is a "civil wrong, other than breach of contract, for which a remedy may be obtained, usu. in the form of damages." Black's Law Dictionary (11th ed. 2019); see also *Hernon v. E.W. Corrigan Construction Co.*, 149 Ill. 2d 190, 195 (1992) (defining "tort" as " '[a] private or civil wrong or injury *** for which the court will provide a remedy in the form of an action for damages,' " and finding that the plaintiff's allegations of negligence and a Illinois Structural Work Act violation fell "within the ambit of the word 'tort' " (quoting Black's Law Dictionary 1335 (5th ed. 1979))); *Pleasant Hill Cemetery Ass'n v. Morefield*, 2013 IL App (4th) 120645, ¶ 31 (finding that "[a] tort is, by definition, contrary to law—it is a civil wrong, a breach of a legal duty, for which the law affords a remedy"). If plaintiffs' underlying claim against

Havas does not create liability in tort, Orbitz cannot recover on its contribution claim. *Raab*, 2019 IL 124641, ¶ 21.

¶ 20     For torts based on a theory of common law negligence, there must exist "a duty or an obligation requiring one to conform to a certain standard of conduct for the protection of another against an unreasonable risk." *Fancil v. Q.S.E. Foods, Inc.*, 60 Ill. 2d 552, 554 (1975). A legal duty necessary to prove tortious conduct, for contribution purposes, may be based either on common law or on a standard of conduct imposed by statute. *People v. Brockman*, 143 Ill. 2d 351, 372 (1991).

¶ 21     In *Brockman*, the State filed a complaint against the defendant for violating provisions of the Environmental Protection Act (Ill. Rev. Stat. 1979, ch. 111½, ¶ 1001 *et seq.*). *Brockman*, 143 Ill. 2d at 358. The State's complaint alleged that the defendant caused or allowed waste to be accepted or deposited on its site, and these violations resulted in the contamination of ground and surface water. *Id.* at 359. The defendant filed a third-party action against the generators and transporters that deposited waste at the site asserting, in relevant part, a claim for contribution under the Contribution Act. *Id.* at 359-60. The third-party defendants argued that the Contribution Act was inapplicable where liability in the case was created by statute and did not sound in tort. *Id.* at 371.

¶ 22     Our supreme court disagreed. Pursuant to the Environmental Protection Act, the third-party defendants had a duty not to contaminate the environment. *Id.* at 372. The court further found that, "[a]s a result of the contamination, the State has suffered injury for which it could have maintained an action for damages." *Id.* Although the State sought injunctive relief rather than damages, that fact did not "convert the conduct into something other than tortious" conduct. *Id.* at 372-73. The court concluded that "a violation of the [Environmental Protection Act] creates the potential for

liability in tort and that it may be a proper predicate for a contribution claim." *Id.* at 373.

¶ 23    Here, Havas' liability for plaintiffs' injuries stems from the Human Rights Act. Therefore, we must determine whether a violation of the Human Rights Act, like a violation of the Environmental Protection Act, creates the potential for liability in tort as required by the Contribution Act.

¶ 24    The Human Rights Act provides that it is the public policy of Illinois "[t]o prevent sexual harassment in employment." 775 ILCS 5/1-102(B) (West 2020). Accordingly, it is a civil rights violation:

> "[f]or any employer, employee, agent of any employer, employment agency or labor organization to engage in sexual harassment; provided, that an employer shall be responsible for sexual harassment of the employer's employees by nonemployees or nonmanagerial and nonsupervisory employees only if the employer becomes aware of the conduct and fails to take reasonable corrective measures." *Id.* § 2-102(D).

"Sexual harassment" is defined as:

> "any unwelcome sexual advances or requests for sexual favors or any conduct of a sexual nature when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment." *Id.* § 2-101(E).

¶ 25    Under the Human Rights Act, it is a civil rights violation for an employer to engage in or condone the sexual harassment of its employees. The statute establishes a standard of conduct that

imposes a duty upon employers like Havas to address any sexual harassment of which they have knowledge.

¶ 26    Plaintiffs' original complaint alleged that Havas "knew about [Meijer's] sexually harassing behavior towards female employees at Havas, yet ignored [Meijer's] conduct *** because Havas did not want to lose Expedia as an important and lucrative client." Plaintiffs alleged that Havas violated the Human Rights Act by failing "to take corrective measures to eliminate the ongoing sexual harassment" and "allowing the sexual harassment to continue, which resulted in [plaintiffs'] horrific rape." Plaintiffs further alleged that Havas "is liable for the hostile work environment it created." As a "direct and proximate result of Defendant Havas' actions," plaintiffs sought damages for loss of income and other employment benefits, as well as compensatory damages for "physical and emotional pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses."

¶ 27    Plaintiffs clearly alleged that Havas breached a duty owed to them under the Human Rights Act and, as a direct and proximate result, plaintiffs suffered injuries for which they sought compensation. In other words, plaintiffs requested damages for tortious conduct pursuant to a statute. See *Brockman*, 143 Ill. 2d at 372-73. Following the reasoning in *Brockman*, we find that a violation of the Human Rights Act "creates the potential for liability in tort and that it may be a proper predicate for a contribution claim." *Id.* at 373; see also *Cirilo's, Inc. v. Gleeson, Sklar & Sawyers*, 154 Ill. App. 3d 494, 497 (1987) (finding that the third-party complaint stated a cause of action against the bank for contribution where the bank breached its statutory duty to "pay only those checks which were 'properly payable,' " and the plaintiff suffered damages as a direct result).

¶ 28    At oral argument, plaintiffs disagreed that their claims pursuant to a statute sound in tort. Instead, they compared liability under the Human Rights Act to dramshop liability under the

Liquor Control Act of 1934 (Dramshop Act) (235 ILCS 5/6-21 (West 2020)). The Dramshop Act provides, in relevant part, that:

"[e]very person who is injured within this State *** by any intoxicated person has a right of action in his or her own name, severally or jointly, against any person, licensed under the laws of this State or of any other state to sell alcoholic liquor, who, by selling or giving alcoholic liquor, within or without the territorial limits of this State, causes the intoxication of such person." *Id.* § 6-21(a).

Our supreme court determined that purveyors selling intoxicating beverages to a person are liable only under the provisions of the Dramshop Act, and this liability is a "nontort liability" for purposes of the Contribution Act. *Hopkins v. Powers*, 113 Ill. 2d 206, 211 (1986).

¶ 29    Unlike the Human Rights Act, the Dramshop Act imposes no duty to conform to a standard of conduct in order to escape liability. Rather, alcohol suppliers are strictly liable under the statute regardless of fault. *Cunningham v. Brown*, 22 Ill. 2d 23, 25-26 (1961). Purveyors of alcohol also owe no duty of care, under common law or statute, to third-party victims injured by an intoxicated person. *Id.* at 26-27; *Hopkins*, 113 Ill. 2d at 211. Generally, when a statutory or common law duty is absent, there is no liability in tort for contribution purposes. *Martin v. Lion Uniform Co.*, 180 Ill. App. 3d 955, 960 (1989). Accordingly, Dramshop Act cases are not relevant authority here.

¶ 30    We also find *Maksimovic v. Tsogalis*, 177 Ill. 2d 511 (1997), a case cited by plaintiffs, distinguishable. In *Maksimovic*, the plaintiff filed a complaint with the Illinois Human Rights Commission alleging sexual harassment by her former manager. Several months later, she filed an action for damages in the circuit court. *Id.* at 514. The issue in *Maksimovic* was whether the exclusive remedy provision of the Human Rights Act divested the circuit court of jurisdiction to consider the plaintiff's separate common law damages claim. *Id.* at 513.

¶ 31     The court found that the plaintiff "alleged facts sufficient to establish the elements of assault, battery and false imprisonment. These are long-recognized tort actions which exist wholly separate and apart from a cause of action for sexual harassment" under the Human Rights Act. *Id.* at 517. The purpose of the Human Rights Act is "to eradicate sexual harassment in the workplace," and the court found this purpose "distinct from [that of] a common law tort action." *Id.* at 518. It further noted that the exclusive remedy provision did not mention common law actions. *Id.* The court found that a "legislative intent to abolish all common law torts factually related to sexual harassment [was] not apparent from a plain reading of the statute." *Id.*

¶ 32     Since the plaintiff's tort claims had an independent basis, "without reference to legal duties created" by the Human Rights Act, her action for damages did not infringe upon the exclusive remedy provision of the Human Rights Act. *Id.* at 517. Therefore, the circuit court could exercise jurisdiction over her tort claims. *Id.*

¶ 33     We note that *Maksimovic* was decided prior to amendment of the statute. Before the August 2007 amendment, the Human Rights Act "provided the Illinois Human Rights Commission with exclusive jurisdiction to adjudicate claims of civil rights violations." *Robinson v. Village of Oak Park*, 2013 IL App (1st) 121220, ¶ 18. The statute now provides that after filing a charge under the Human Rights Act, the complainant may submit a written request to opt out of the investigation and "commence a civil action in the appropriate circuit court or other appropriate court of competent jurisdiction." 775 ILCS 5/7A-102(C-1) (West 2020). We should read *Maksimovic* in light of the exclusive jurisdiction provision applicable to the case at the time.

¶ 34     More importantly, *Maksimovic* found only that the Human Rights Commission did not have exclusive jurisdiction over the plaintiff's common law tort claims. Although the court found that a violation of the Human Rights Act differed in purpose from a common law tort action, it

never determined that a civil rights violation could not be a tort. *Maksimovic* did not reach this issue because the defendant did not seek contribution from another tortfeasor. We find *Maksimovic* inapplicable here.

¶ 35    Likewise, we find unavailing plaintiffs' argument that allowing contribution in this case would frustrate the comprehensive statutory scheme created when the legislature enacted the Human Rights Act. The two cases plaintiffs cite in support, *Thomas v. EDI Specialists, Inc.*, 773 N.E.2d 415 (Mass. 2002), and *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*, 451 U.S. 77 (1981), are distinguishable.

¶ 36    In *Thomas*, the defendant employer in a discrimination complaint sought contribution from its employee, who was the primary offender. *Thomas*, 773 N.E.2d at 416. The complaint did not name the employee. *Id.* The Massachusetts Supreme Court found that allowing an employer to seek contribution from an employee would contradict the statute's clear intent to hold employers responsible for the discriminatory actions of its employees, "regardless of whether these actions were authorized or supported by the employer or its policies." *Id.* at 419. The contribution action against the employee was also improper because the employee was not named in the charge before the Commission or in the complaint. As such, he had no opportunity to invoke the administrative protections of the statute. *Id.*

¶ 37    In *Northwest Airlines*, the district court found the air carrier liable under the Equal Pay Act of 1963 (Equal Pay Act) (29 U.S.C. § 206(d) (1976)) and Title VII of the Civil Rights Act of 1964 (Title VII) (42 U.S.C. § 2000e-2 (1976)), for the improper wage differential between certain female and male employees. *Northwest Airlines*, 451 U.S. at 81. The air carrier filed motions for contribution and indemnification against two unions that allegedly bore partial responsibility for the difference in wages. *Id.* at 80-82. The court denied the motions as untimely. *Id.* at 82. "Promptly

thereafter," the air carrier filed a separate action claiming a federal common-law right to contribution from the unions. *Id.* The district court dismissed the action under the Equal Pay Act but determined that the air carrier stated a claim for contribution under Title VII. *Id.* at 83-84.

¶ 38 The United States Supreme Court reasoned that a right of contribution in the case could exist if (1) the Equal Pay Act and Title VII explicitly or implicitly created the right or (2) federal common law recognized the right. *Id.* at 90. The court found neither an express nor implied right of contribution in favor of employers in the Equal Pay Act or in Title VII. *Id.* at 93. Rather, the comprehensive remedial scheme of those statutes strongly evidenced a legislative intent "not to authorize additional remedies," which federal courts had little power to change. *Id.* at 93-95. The Court further found that no federal common law right of contribution existed among tortfeasors outside of the admiralty context. *Id.* at 96-97. Therefore, the district court should have granted the unions' motion to dismiss the entire action for contribution. *Id.* at 98-99.

¶ 39 We do not find *Thomas* or *Northwest Airlines* persuasive here. First, *Thomas* is a Massachusetts case, and this court is not bound by the decisions of other states. *Perik v. JPMorgan Chase Bank, N.A.*, 2014 IL App (1st) 132245, ¶ 25. Additionally, unlike *Thomas*, Orbitz was not seeking contribution from its employee, and plaintiffs' original complaint and charge named Havas as a party. The concerns expressed by the Massachusetts court in *Thomas* are not implicated here.

¶ 40 In *Northwest Airlines*, the United States Supreme Court found that the air carrier had no contribution right to claim at all. Here, the Illinois legislature enacted the Contribution Act specifically to recognize a joint tortfeasor's right of contribution. *Doyle*, 101 Ill. 2d at 8. We need not scour the provisions of the Human Rights Act to search for a contribution remedy or look to common law, as was the case in *Northwest Airlines*. We do not read *Northwest Airlines* as prohibiting a contribution claim that is authorized by an Illinois statute, as is Orbitz's claim here.

In fact, the Court in *Northwest Airlines* recognized the propriety of such a claim. See *Northwest Airlines*, 451 U.S. at 86-87 (noting that although there is no common law right to contribution among joint tortfeasors, most states have changed that rule "either by statute or by judicial decision").

¶ 41 Plaintiffs argue, however, that the Human Rights Act provides no method for an employer to join a third party in contribution "at the agency level." Therefore, similar to *Northwest Airlines*, allowing contribution here would frustrate the process set forth in the statute. We disagree.

¶ 42 Havas was named in plaintiffs' charge with the Department. After plaintiffs filed their charge, the Department served Havas and plaintiffs with a notice of plaintiffs' right to opt out of the Department's investigation. See 775 ILCS 5/7A-102(B) (West 2020). Plaintiffs opted out of the investigation, and upon receiving notice of their opt-out, the Department "ceased its investigation" and "administratively clos[ed] the charge." *Id.* § 7A-102(C-1). Plaintiffs thereafter filed an action in circuit court, and Orbitz filed its third-party claim for contribution against Havas in those proceedings. At that point, the administrative process set forth in the Human Rights Act no longer applied.

¶ 43 Furthermore, allowing Orbitz to set off a portion of plaintiffs' settlement with Havas supports the Contribution Act's purpose of equitably apportioning damages among joint tortfeasors. Plaintiffs' complaint alleged that both Orbitz and Havas fostered a corporate culture that tolerated the sexual harassment of women, and both had knowledge of Meijer's misconduct but failed to address his troubling behavior. As a result, plaintiffs suffered compensatory damages, as well as physical and emotional pain, mental anguish and loss of enjoyment of life. Contribution between two tortfeasors is "the enforcement of an equitable duty to share liability for the wrong done." (Internal quotation marks omitted.) *Doyle*, 101 Ill. 2d at 14. What matters is the culpability

of the parties, not the theories of recovery on which liability is based. *Id.* We agree with the trial court that the Contribution Act applied here.

¶ 44    Plaintiffs also contend that the total settlement amount should not be set off because the Contribution Act allows only a setoff of compensation they received for the same injury. The trial court determined that Orbitz was entitled to a setoff of 30% of the total settlement amount, which represented plaintiffs' pain and suffering damages. However, the order allowed Orbitz time to file a motion for reconsideration of the setoff amount until "30 days from the close of discovery." As a result, the court did not make this determination appealable under Rule 304(a).

¶ 45    The trial court's determination as to the amount of setoff was not a final judgment, as Orbitz has the opportunity to file a motion to reconsider the amount. A judgment is not final if the trial court retains jurisdiction to resolve matters of substantial controversy. *In re M.M.*, 337 Ill. App. 3d 764, 771 (2003). This court's jurisdiction is limited to appeals from final judgments. *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989). Therefore, this issue is not properly before us at this time.

¶ 46                                III. CONCLUSION

¶ 47    For the foregoing reasons, the judgment of the trial court is affirmed.

¶ 48    Affirmed.

***Saunders v. Orbitz Worldwide, LLC*, 2023 IL App (1st) 221018**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-05809; the Hon. Preston Jones Jr., Judge, presiding. |
| | |
| **Attorneys for Appellant:** | Lisa B. Weinstein, of Grant & Eisenhofer P.A., of Chicago, Kelly L. Tucker (*pro hac vice*) and Cynthia B. Morgan (*pro hac vice*), of Grant & Eisenhofer P.A., of Wilmington, Delaware, and Irene R. Lax (*pro hac vice*), of Grant & Eisenhofer P.A., of New York, New York, for appellants. |
| | |
| **Attorneys for Appellee:** | Michael A. Warner Jr. and Caroline K. Kane, of Franczek P.C., and Bennett L. Epstein, Jena L. Levin, and Patrick J. McMahon, of Foley & Lardner LLP, both of Chicago, for appellees. |